McILROY v. McILROY.

4-3873

Opinion delivered May 27, 1935.

46

*Duty & Duty* and *Karl Greenhaw,* for appellant.

*Pearson & Pearson* and *Bernal Seamster,* for appellee.

Butler, J. In February, 1933, Ethel McIlroy, wife of W. H. McIlroy, brought suit for separate maintenance. W. H. McIlroy filed an answer and cross-complaint for divorce, whereupon plaintiff amended her complaint, praying for divorce, for alimony, and a settlement of property rights. The chancellor found that "the defendant was guilty of such acts and indignities toward the plaintiff herein as to render her condition in life intolerable in that he treated her with abuse and neglect steadily and consistently pursued; that defendant was guilty of constant nagging and quarreling with the plaintiff herein, and that such acts were done through no fault of the plaintiff," whereupon a decree was rendered granting plaintiff absolute divorce, fixing her alimony at the sum of $50 for twenty-four months and allowing her attorneys' fees. The personal property involved appears to have consisted only of furniture and household accessories, a part of which was decreed to be the property of the Industrial Finance Company, a part belonging to plaintiff individually, and a part to defendant. Subsequent to this decree, a supplemental order was made allowing plaintiff $250 for the expense of a contemplated operation, which amount was to be deducted from the payment of the alimony of the last five months of the

twenty-four months' alimony previously granted. In plaintiff's amended complaint she prayed for an interest in the dwelling house which had been occupied by her and the defendant. This prayer was ignored by the decree.

One of the contentions on appeal is that the court should have adjudged plaintiff an interest in the home. Another contention is that the court erred in not giving plaintiff a certain carpet and an interest in the dining room furniture, and it is lastly contended that the decree as to alimony was in effect an allowance of alimony in a gross amount.

Since the rendition of the decree, the defendant, W. H. McIlroy, has paid a substantial sum of money under and by virtue of the divorce decree as alimony to the plaintiff which she has accepted. Plaintiff, however, has not accepted any item of personal property under and by virtue of the decree. This, defendant (appellee) contends, constitutes a waiver of the right to prosecute the appeal. The appellee argues that appellant, having obtained and accepted a decree of divorce and having been paid a part of the alimony allowed thereunder, is estopped to prosecute an appeal as she has accepted a part of the benefits of the decree. To sustain this contention, we are cited to the cases of *Bolen* v. *Cumby,* 53 Ark. 514, 14 S. W. 926; *Dismukes* v. *Halpern,* 47 Ark. 320, 1 S. W. 554; *Taylor* v. *Taylor,* 153 Ark. 206, 240 S. W. 6; *Dawson* v. *Mays,* 159 Ark. 331, 252 S. W. 33; *Coston* v. *Lee Wilson Co.,* 109 Ark. 548, 160 S. W. 857, and *Hutton* v. *Pease,* 190 Ark. 809, 81 S. W. (2d) 21. The cases cited do not support the contention made.

In *Dismukes* v. *Halpern, supra,* the point decided was that the acceptance of a deed imposing certain terms binds the grantee to their performance. In the case of *Taylor* v. *Taylor, supra,* it appears that the wife had obtained a decree of divorce in which proceeding no property rights had been sought or adjudicated. Subsequent to the decree and after the lapse of the term at which it had been granted, the divorced wife brought an action praying for one-third of her former husband's property. The court held that the statute under which plaintiff brought her action contemplated a division of the hus-

band's property when the decree of divorce was granted, and that, if the wife failed then to ask for and obtain such relief, the matter became *res judicata.* The decree first rendered was not entered until a later date. The plaintiff contended that she was entitled to the relief prayed in the subsequent suit as she was not present when the divorce decree was entered *nunc pro tunc* by the court on its own motion. In disposing of this contention, the court held that the decree was for plaintiff's benefit, and that she could not consider it valid for one purpose and invalid for another, and that she had no right to complain that she did not obtain the relief which she neither asked nor desired in the first instance.

In the case of *Dawson* v. *Mays, supra,* a wife had obtained a divorce and, after the death of her divorced husband, sought to have the decree set aside in order that she might take dower in his estate. The court held that the wife could not thus change her status after the death of the husband from whom she had secured a decree of divorce.

*Bolen* v. *Cumby, supra,* was an action of ejectment in which the plaintiff recovered a judgment for the possession of the land in question and the defendant recovered a judgment for the value of the betterments he had placed thereon. The defendant was tendered the amount of his judgment, which he accepted. On appeal it was held: "His acceptance of the amount adjudged to him for ameliorations is inconsistent with his claim of title and of the right to possess the land. The amount adjudged to him is the recompense for the loss of the possession and of his supposed title. He cannot have the title and possession, and also remuneration for their loss. He cannot, therefore, while enjoying the remuneration awarded him, prosecute an appeal from the residue of the judgment." The doctrine of this case was restated in *Coston* v. *Lee Wilson Company, supra,* and there is nothing in the case of *Hutton* v. *Pease, supra,* which in any way impairs it.

In the case at bar there is no cross-appeal challenging the amount of alimony to be paid each month. Therefore, in any event, the appellant is entitled to those sums,

and there is nothing inconsistent in her acceptance of the same and her contention as heretofore stated. *Kelley* v. *Laconia Levee District*, 74 Ark. 202, 85 S. W. 249, 87 S. W. 638.

It is the contention of appellant that she should have been awarded some interest in the home as she was led to believe, while it was being erected, that it was to be in fact and in law the home of her husband and herself. Her contention was based on the following circumstances: appellant and W. H. McIlroy were married in 1923. They lived together as husband and wife until early in 1927 when she sued for, and obtained, a divorce. She was awarded $100 per month as alimony for a certain period, at the expiration of which she was to be paid the sum of $5,000 in cash additional. J. H. McIlroy, father of W. H. McIlroy, guaranteed the payment of these sums. Some two or three months after the decree of divorce, W. H. McIlroy effected a reconciliation. The decree of divorce was annulled, and the marital relation resumed and the property settlement set aside. They had previously lived in apartments or boarded, and in effecting the reconciliation appellant was promised among other things that a nice home would be built for her. J. H. McIlroy was the owner of a number of building lots, and he, in company with his son and appellant, selected certain of these lots upon which the home was to be erected. J. H. McIlroy pointed out these lots to them and was present in person frequently during the construction of the dwelling. Mrs. McIlroy was there almost every day. During the period of construction, in order that her husband might be better able to build the house, appellant paid her own personal expenses from her earnings and a material part of their living expenses. The construction of the house began sometime in 1929, and it was completed in the latter part of 1930. Appellant entered upon the occupancy of the house when it was completed in the belief that it was the home of her husband and herself. She had no intimation that it was not such until after the filing of her complaint in this case, when—and in a short time thereafter—a deed was placed upon record from J. H. McIlroy to the Industrial Finance

Company conveying the lots upon which the home stood. The Industrial Finance Company is a corporation, which, according to the testimony of J. H. McIlroy and W. H. McIlroy, was created for the convenience of J. H. McIlroy in the conduct of his business and of which he is the virtual owner. From the time of its incorporation and until the hearing of this case, W. H. McIlroy was the president of this corporation and in active and sole management thereof. He is also vice-president of the McIlroy Bank & Trust Company of which J. H. McIlroy is president; J. H. McIlroy and his sister owning fifty per cent. of the capital stock of this institution. In addition to his official connection with the bank and the Industrial Finance Company, W. H. McIlroy is connected in an official way with other allied industries.

W. H. McIlroy is a man, forty-three years of age, and in the discharge of his business duties in connection with the varied McIlroy interests he makes frequent and extended business journeys. Notwithstanding all this, he testified that since 1929 he had received no remuneration. He also testified that the home was built with money furnished by the Industrial Finance Company and not with his own money. It was paid out of an account carried as "W. H. McIlroy, Special." It appears, however, that in July, 1930, while the house was under construction, W. H. McIlroy acquired from a sale of certain stock the sum of $22,700 in cash which he paid into the treasury of the Finance Company. In explaining the disposition of this sum, he stated that at the time this money was received by him he owed the Finance Company $9,000, which was paid out of the sum he received, leaving $13,700 to his credit in the treasury of the company. When asked what became of this balance, he answered, "then I began to whittle on that—different withdrawals." When again pressed in this particular, he answered, "I spent it." When asked, "What for," he answered, "Thousands of things—living expenses," and when urged to further explain, he said, "I told you I spent it in numerous ways—living."

It is undisputed that appellant in 1928 was earning, from a business of her own, about $200 per month net,

and at the time appellee said that he was using his money for living expenses it is evident that it was not expended on his wife. She was able to, and did, present vouchers for her personal expenses during the year 1929, including drugs, clothing, traveling expenses, etc., amounting in the aggregate to more than $1,000, and for approximately the same sum in the year 1930. She produced also canceled checks for sums expended for household expenses—pay of the servant, groceries, household utensils, laundry, etc., for the year 1929 in the approximate sum of $170; and for the year 1930, in the approximate sum of $129. All of this came from her earnings except an allowance of $75 a month which appellee gave her for an uncertain period of time, but which, it is admitted, he stopped giving her about June, 1930. She continued to pay her personal expenses for a further period of time—at least during the year 1931.

W. H. McIlroy, in explaining why he continued to work without pay, said, "I have a house to live in, and another consideration is, I am representing my own folks' interests." Since their separation he has continued to reside in the home, keeping open house and having a housekeeper to look after the establishment at an expense, he says, of about $130 per month. When it is remembered that appellant was paying her personal expenses and contributing to the actual household expenses, it seems clear that the living expenses about which appellee testified could not have been very great, and, as his traveling expenses were paid by the business interests he represented, there remained no other expense save his own personal expenditures. From this, it follows that his explanation of how the $13,700 was spent is both unsatisfactory and insufficient.

When it is remembered that the construction of the house began in 1929, that the Finance Company paid the bills therefor, and in July, 1930, W. H. McIlroy was indebted to said company in the sum of $9,000, the only reasonable explanation for this is that this debt was contracted for money furnished in building the house. When the $13,700 was paid into the treasury of the Finance Company in July, 1930, while the house was still under

construction, there can be but little doubt, but that it, too, went into the construction of the house, and that J. H. McIlroy knew of this. It is our conclusion that at least $13,700 was used in the construction of the house, and, as the title to the property was in J. H. McIlroy, it should be treated as personal property of W. H. McIlroy. The appellant is therefore entitled to one-third thereof under § 3511, Crawford & Moses' Digest, and should have judgment against W. H. McIlroy for that amount.

As to the division of personal property, the evidence relative to the ownership of the carpet in controversy is in conflict. It is admitted that appellant bought the carpet and paid $150 therefor with her own money. Appellee claims that it was given him by the appellant, and, while she denied this, we cannot say that the finding of the trial court was against the preponderance of the evidence. It must therefore stand. The situation as to the dining room furniture is quite different. It is undisputed that it cost about $700; that appellee paid only $350 of that amount and appellant paid the balance. The court therefore erred in awarding the furniture to the appellee. It should have declared that the appellant have an equal interest therein and ordered the same sold and the proceeds divided between appellee and appellant.

On the question of alimony, we are of the opinion that the decree of the chancellor was in effect the award of a gross sum to be paid in installments which is contrary to the doctrine announced in our cases cited by appellant namely, *Brown* v. *Brown,* 38 Ark. 324; *Wood* v. *Wood,* 59 Ark. 441, 27 S. W. 641, and *Walker* v. *Walker,* 147 Ark. 376, 227 S. W. 762. The rule in those cases seems to be that a court, in awarding alimony, should not fix a specific sum, but a continuing allowance payable at fixed regular intervals. It is true that future circumstances might arise which would warrant the court in altering the amount of the allowance or in discontinuing it altogether.

The uncontradicted testimony shows that appellant, by reason of physical infirmities, has been obliged to discontinue her work, that this occurred a year or more before the institution of this action, and that, if she is to

be restored to health, it will be necessary for her to have a serious and expensive operation performed. Her disability occurred and persisted during the existence of the marriage contract and was considered by the trial court. In a motion filed since the transcript was lodged in this court, it is suggested that the necessary operation has been performed, and that it cost a sum greatly in excess of the amount awarded by the trial court for that purpose. The appellant, however, in the court below, did not offer any evidence as to the probable expense of the operation, and we cannot say that the amount fixed is unreasonably low. Under the circumstances, we think the trial court erred in deducting this expense from the alimony.

The decree of the trial court as to the divorce is affirmed, and in other respects reversed, and the cause is remanded with directions to award appellant the sum of $50 per month as alimony with no limit now fixed on said number of monthly payments, and, in addition thereto, that she have judgment in the sum of $250 for the operation; that she be awarded a one-half interest in the dining room furniture; that she have judgment against W. H. McIlroy in the further sum of $4,566 ($4,566 1/3 of $13,700 aforesaid) and on remand that J. H. McIlroy and the Industrial Finance Company be made parties to the end that they show cause why a lien should not be declared on the lots conveyed by J. H. McIlroy and the buildings thereon to satisfy $4,566 of the sums ordered to be adjudged against W. H. McIlroy, and for such other proceedings as the parties may be advised in conformity with the principles of equity and not inconsistent with this opinion.

McHANEY, J., dissents.