Thelma STOUT *v.* Tom C. STOUT

CA 81-278                                    630 S.W. 2d 53

Court of Appeals of Arkansas
Opinion delivered March 24, 1982

*Dan M. Orr* and *H. David Blair,* for appellant.

*Harkey, Walmsley, Belew & Blankenship,* by: *John M. Belew,* for appellee.

GEORGE K. CRACRAFT, Judge. The appellant brings this action from a decree of divorce entered in the Chancery Court of Sharp County on May 27, 1980, which granted appellee a divorce, ordered all of their marital property, except an individual retirement account in the name of the husband, sold and proceeds equally divided, and awarded the appellant alimony in the amount of $300 per month for a one year period. The appellant, Thelma Stout, maintains on this appeal the chancellor erred in not awarding her more adequate continuing alimony and in not making an equal division of the individual retirement account.

These parties were married in 1947 and apparently lived together in harmony for a number of years. The husband was a petroleum engineer and made a substantial salary at his jobs which took him from oil field to oil field. In 1974 his employment took him to Libya under a contract of employment which made provisions for liberal returns to the United States. In 1977 he moved his wife back to Cave City in her native state of Arkansas, where they designed and built an expensive home in which she lived during his absence. He continued to work at his job in Africa for about six months thereafter and then terminated that employment and returned to Cave City where he purchased a cafe which he and his wife operated. It was his testimony that during their stay in Cave City they maintained themselves from the profits of that cafe which he stated amounted to $1200 a month plus their meals.

Appellee testified that prior to his employment in Africa the marital relationship had deteriorated and that during the period they resided in Cave City it deteriorated even further. It was his testimony that during this period he was subjected to constant unmerited reproach and unwar-

ranted accusations of infidelity. His allegations of un-merited reproach were corroborated by other witnesses and the record contains a number of letters the appellant wrote to him after their separation in which the accusations of infidelity were continued and her settled hatred of him clearly manifested. In July 1980 the appellee left Cave City and accepted employment in Oklahoma with the Triple D Drilling Company at a salary of $800 a week plus an expense allowance of $250 a month. He thereafter continued to make the payments on the home and pay substantial bills by sending monies to the wife. In October 1980 he brought this action for divorce. Appellant answered and counterclaimed for divorce.

In the late fall of 1980 personality conflicts developed between the appellee and those with whom he worked at Triple D Drilling Company. In February of 1980 when his contrct was up for renewal he terminated himself because of those conflicts which he said were intensified by telephone calls to his employer and fellow workers from the appellant.

On leaving Triple D Drilling Company he went into business for himself as a drilling supervisor. This was his sole employment at the time of the trial. As a drilling supervisor he oversees the drilling operations conducted by other companies from start to completion. In such a business he is required to keep up old contacts and make new ones in the petroleum business from coast to coast, which involves constant travel. He is required to pay his own expenses. As he supervises only one oil well at a time he is required to keep in constant touch with activity in the industry in order to obtain new employment when current wells are completed. Appellee testified that on his present income in the new employment he was merely breaking even, with the exception of the $600 he was paying on the house note. He was optimistic about the future of this new occupation but at the time of the trial could not speculate what the future held in store for him. When asked by the court about his prospects for the following year he responded: "I hope it will be at least twice as good as it is now. I should be busy all the time." He indicated that any further

statement by him would be based on pure speculation and surmise.

At the time of the trial the parties had sold the cafe in Cave City and divided the proceeds between them, each receiving $5,250. After hearing the evidence the chancellor granted the appellee a divorce and with the exception of the individual retirement account ordered all of their property sold and the proceeds equally divided. He awarded the wife alimony in the amount of $300 per month for a period of one year.

The appellant first contends that the court erred in not making a more adequate allowance of alimony on a permanent basis. We find no merit to this contention.

While chancery cases are tried *de novo* on appeal the findings of a chancellor will not be reversed unless clearly against a preponderance of the evidence. Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. *Andres v. Andres,* 1 Ark. App. 75, 613 S.W. 2d 409 (1981); Rule 52 (a), Arkansas Rules of Civil Procedure. The award of alimony in a divorce action is not mandatory but is a question which addresses itself to the sound discretion of the chancellor. We do not reverse the chancellor's determination unless we find a clear abuse of that discretion. *Narisi v. Narisi,* 229 Ark. 1059, 320 S.W. 2d 757 (1959); *Neal v. Neal,* 258 Ark. 338, 524 S.W. 2d 460 (1975). In determining whether to allow alimony and in fixing the amount to be allowed our court has stated many factors which may be considered by the court. In *Boyles v. Boyles,* 268 Ark. 120, 594 S.W. 2d 17 (1980) the court stated:

> In fixing the amount of alimony, the courts consider many factors. Among them are the financial circumstances of both parties, the financial needs and obligations of both the couple's past standard of living, the value of jointly owned property, the amount and nature of the income, both current and anticipated, of both husband and wife, the extent and nature of the resources and assets of each of the parties, the amount

of income of each that is "spendable," the amounts which, after entry of the decree, will be available to each of the parties for the payment of living expenses, the earning ability and capacity of both husband and wife, property awarded or given to one of the parties, either by the court or the other party, the disposition made of the homestead or jointly owned property, the condition of health and medical needs of both husband and wife, the relative fault of the parties and their conduct, both before and after separation, in relation to the marital status, to each other and to the property of one or the other or both, the duration of the marriage and even the amount of child support.

However, in *Lewis* v. *Lewis*, 202 Ark. 740, 151 S.W. 2d 998 (1941), and *Boyles* v. *Boyles*, supra, the court has stated that in fixing the amount of alimony the primary consideration is the ability of the husband to pay regardless of what other factors may indicate. In the case now before us for review the testimony as to the present earning capacity of the appellee was that he was merely "breaking even" in his new employment. While he was optimistic about the future he could only speculate as to what he might earn during the coming year or what his economic future might be. We find no error in the chancellor's refusal to speculate what the appellee's earnings might be.

Also, as indicated in our cases, the chancellor could consider the ability of the wife to earn. There was evidence before the court that she had worked in various employments and had for a number of years immediately prior to the commencement of the action worked full time in the cafe. He also might consider the property settlement the wife is to receive. He has directed that she receive one-half of the proceeds of the sale of a home in which the equity was stated to be substantial, one-half of $7800 savings, one-half of the proceeds of all other personal property including a participating royalty in two oil wells which then produced $80 a month. It was also stipulated by the parties that under appropriate regulation she would, because of the duration of this marriage, be eligible to receive social security on

appellee's contributions even though the divorce had been granted.

Also a permissible factor for the court to consider is the relative fault of the parties. Here the court found that the fault lay entirely with the appellant and the record fully warrants such a finding. When all of these prescribed factors are considered with the facts and circumstances of this case we cannot say that the chancellor abused his discretion in not awarding continuing alimony.

Nor do we find error in limiting the $300 payment to a period of one year. Our court has declared that award of alimony in a gross sum payable in installments is contrary to its long established rule that alimony should not be a fixed sum but a continuing allowance payable at regular intervals. *McIlroy* v. *McIlroy*, 191 Ark. 45, 83 S.W. 2d 550 (1935). In *Beasley* v. *Beasley*, 247 Ark. 338, 445 S.W. 2d 500 (1969) and *Webb* v. *Webb*, 262 Ark. 461, 557 S.W. 2d 878 (1977) the court recognized an exception for allowance of short term awards as a method of allocating to the wife an interest in her husband's property to balance some inequity in the division of property. Here the chancellor stated as his reason for ordering installment payments was to "aid her in the transition." While these payments were referred to as "alimony" in the decree, when all circumstances surrounding the award are considered, we conclude that this was not an award of alimony "in gross."

The appellant next contends that the chancellor erred in failing to make equal division of an individual retirement account established by the appellee which the court found to be marital property. She maintains that the trial court did not divide that asset equally because of his erroneous interpretation of the law. The court, in his findings rendered in open court, stated with respect to that item as follows:

> The Court is not ordering that sold because we must consider Mr. Stout. He's getting along in years too, and it's a retirement fund that *he has built up*. And I want it stated in there, that that is an exception for the reason that it will cost him income tax because it's

purposely put in there to avoid it, and if it's sold right now, he will have to pay income tax on it. It will be income under the I.R.S. regulations and also he will have a penalty of interest there. (Emphasis added)

Appellant contends that the chancellor's refusal to divide the account upon the basis that a division would cause income taxes to be paid on a portion of it was erroneous. 26 USCA § 408 (d) (6) and pertinent regulations provide that the transfer of an individual interest in whole or in part of an individual retirement account to a former spouse under a valid decree or written instrument incident to a divorce shall not be considered to be a taxable transfer by the individual to his former spouse.

While the court may have been in error in its declaration, the court declared two reasons for not dividing that account equally. Ark. Stat. Ann. § 34-1214 (A) (1) (Supp. 1981) provides that all marital property shall be distributed equally unless the court finds such division to be inequitable, in which event it may make some other division which it deems equitable. Section 34-1214 (A) (1) (8) provides that in such event the court may take into account "the contribution of each party in acquisition, preservation or appreciation of marital property." The second reason stated by the court for refusing to divide this asset equally is an acceptable one under that section.

Affirmed.

GLAZE, J., dissents.