Cindy H. COLE *v.* Randall E. COLE

CA 04-424 201 S.W.3d 21

Court of Appeals of Arkansas
Opinion delivered January 5, 2005

138

*Goodwin, Moore, Broadaway, Gray & Langley, L.L.P.*, by: *Harry Truman Moore* and *Angela Bowden Gray*, for appellant.

*Christine Horwart*, for appellee.

L ARRY D. VAUGHT, Judge. This is the second appeal in this divorce case. In *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003), this court reversed and remanded the valuation and division of the marital estate, as well as the issues of alimony and child support. This appeal challenges the trial court's decisions on those same issues following remand. We affirm in part and reverse and remand in part.

Appellant Cindy Cole (Cindy) and appellee Randall Cole (Randall) were married in 1976, while Randall was still in medical school. The parties separated in 1999, and the divorce decree was entered on August 13, 2001. The major issues at trial were the valuation of Randall's interest in a surgery center and the distribution of the marital property. Cindy appealed, and in *Cole v. Cole, supra*, we reversed the trial court because of the use of an improper method in valuing Randall's interest in the surgery center. We also

reversed the trial court's division of the other marital property as well as the determination of the amount of alimony and child support awarded because those calculations were dependent upon the valuation determination.

Following remand, the trial court retried the property and support issues. At the hearing, both parties presented expert witnesses who testified regarding the value of the surgery center. Finding Randall's expert witness to be "highly persuasive," the judge ordered that Randall's interest in the surgery center should be valued at $702,250, with one-half ($351,125) awarded to Cindy. The court also awarded a country-club membership and made the parties tenants in common regarding the marital residence. The trial court also found, after consideration of various factors, that there was not sufficient economic imbalance in the earning power of the parties or in their standard of living to justify an award of alimony to Cindy. Finally, the court calculated Randall's net monthly income at $24,551 and ordered him to pay child support of $3682 per month.

From that order, Cindy has appealed. She argues that the trial court erred in its valuation of Randall's interest in the surgery center; that the trial court erred in not awarding permanent alimony; that the trial court erred in calculating Randall's child-support obligation; and that the trial court erred in its unequal division of the other marital assets.

## I. Valuation of the Surgery Center

For her first issue, Cindy argues that the trial court erred in valuing Randall's interest in the surgery center at $702,250. With respect to the division of property in a divorce case, we review the trial judge's findings of fact and affirm them unless they are clearly erroneous. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327 (2001). In order to demonstrate that the trial court's ruling was erroneous, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Skokos v. Skokos, supra.*

Cindy's expert, Cheryl Shuffield, a certified public accountant, originally valued Randall's interest in the surgery center at $1,404,500. She then valued the interest at $1,274,200, in order to

account for the goodwill personally attributable to Randall's presence. The report was based on the fair market value. Randall presented two experts, Daniel Bernick and Michael Brown, neither of whom were certified public accountants. Bernick did not do an independent evaluation; instead, he reviewed Shuffield's report and changed certain assumptions made by Shuffield for discounts for lack of marketability (50% versus Shuffield's 10%) and lack of a controlling interest (31.5% versus Shuffield's 10%) to arrive at a value of $497,303. Bernick testified that some of Shuffield's assumptions were overly optimistic and that, if he had performed an independent valuation, he would have used different assumptions than those used by Shuffield. Bernick also testified that he did not use a fair-market-value approach in his valuation. Brown, a certified healthcare business consultant specializing in evaluations of ophthalmology practices, valued Randall's interest at $297,500. Brown's report discussed the value the goodwill due to Randall's presence at the surgery center. He testified that he used multiple methods to arrive at his valuation, each with a different discount for Randall's goodwill. The discounts ranged from 34% to 50%. Brown later testified that he used a 25% discount for Randall's personal goodwill. He did not state whether his valuation used a fair-market-value approach.

David Manning, senior vice president for development of AmSurg Corporation, testified that AmSurg purchased a 51% interest in the surgery center in December 2002 for $2,143,429. The purchase agreement contained a provision whereby Randall and Dr. William Hof agreed to remain with the surgery center for the next six years. Manning testified that the center would not be as profitable without Randall or Hof and that the most valuable part of the transaction was obtaining Randall's and Hof's services for that time period. Manning also testified that, without Randall's presence, AmSurg would not have entered into the transaction.

The trial court, citing *Skokos v. Skokos, supra,* found Randall's interest in the surgery center to be worth $702,500 as of the date of the divorce, August 13, 2001. This figure was obtained by applying a 50% multiplier for Randall's personal goodwill to the overall value of $1,404,500.

 Cindy argues that the trial court erred in accepting Cheryl Shuffield's valuation of Randall's interest in the surgery center but not accepting her corresponding determination of the goodwill in order to arrive at her net valuation of the interest. The valuation of goodwill is a question of fact and is dependent upon

the particular circumstances. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Williams v. Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003). The fact-finder may accept or reject all or any part of the testimony of expert witnesses. *Western Union Tel. Co. v. Byrd, Adm'x*, 197 Ark. 152, 122 S.W.2d 569 (1938). In light of the testimony of the three expert witnesses and David Manning's testimony that AmSurg would not have purchased the surgery center without Randall's continued presence, the trial court's valuation is not clearly erroneous, and we affirm on this issue.

## II. Alimony

For her next point, Cindy argues that the trial court erred by not awarding her permanent alimony. We disagree. The decision whether to award alimony is a matter that lies within the trial judge's sound discretion, and on appeal, this court will not reverse a trial judge's decision to award alimony absent an abuse of that discretion. *Ellis v. Ellis*, 75 Ark. App. 173, 57 S.W.3d 220 (2001). The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* A court may also consider other factors including, among other things: (1) the parties' financial circumstances; (2) the amount and nature of the parties' income, both current and anticipated; (3) the extent and nature of the parties' resources and assets; (4) the parties' earning ability and capacity. *Id.*

At the time of trial, Cindy was forty-nine years old and suffered no health problems. She had worked as a sales representative during the marriage prior to staying home with the children. She has a degree in home economics and began working as a real estate agent after the parties' separation, although she testified at trial that she had given up trying to sell real estate. Cindy converted retirement accounts acquired during the marriage into stocks and bonds valued at $431,595. She was awarded $344,890 as her half of Randall's interest in the Genesis Partnership; she testified that she used those funds to pay her attorney's fees and other expenses. She also received a partial distribution from her father's estate of $77,769. Cindy testified that her monthly expenses for her and her minor daughter amounted to $12,549, not including the first mortgage. In addition, she received $3000 per month in alimony and $3660 per month in child support under the original decree. She also testified as to the high standard of living

that the parties enjoyed prior to the divorce and stated that she no longer enjoys such a lifestyle. She will also receive $351,000 as one-half of Randall's interest in the surgery center and one-half of the value of the marital residence when it is sold.

Randall testified that his net monthly income was $16,234 in 2001 and $20,903 in 2002. He estimated that his gross income for 2003, not including the money received from the AmSurg purchase, would be $310,000. He also testified that he has some $1.2 million in investment accounts. He also retained funds from the sale of the Genesis Partnership. Further, he retains an ownership interest in the surgery center and in the clinic.

■ Here, the trial court considered the proper factors in deciding that Cindy had not demonstrated a need for permanent alimony. Cindy's argument focuses on the parties' standard of living before the divorce and the assets awarded to Randall. However, the trial court's failure to discuss Randall's assets does not render the decision erroneous because the court could have determined, based on the assets awarded to Cindy, that there was no "need" for alimony, without having to reach the issue of Randall's ability to pay alimony. Her argument suggesting that she needs support until she can draw Social Security benefits overlooks certain facts. Cindy is an educated person, with a real estate license. She testified that she did not want to put in significant hours in real estate because her minor daughter still lives at home and she (Cindy) wants to be home when her daughter arrives from school. However, the daughter will soon graduate from high school, and Cindy testified that she can then become more involved in the real estate business. We cannot say that the trial court abused its discretion in reaching its decision.

## III. Child Support

■ Cindy next argues that the trial court erred in its calculation of Randall's child-support obligation. We agree. Child-support cases are reviewed *de novo* on the record. *Paschal v. Paschal*, 82 Ark. App. 455, 117 S.W.3d 650 (2003). It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Cole, supra*. This income may differ from income for tax purposes. *See Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). As a rule, when the amount of child support is at issue, the appellate court will not reverse the trial

judge absent an abuse of discretion. *McWhorter v. McWhorter,* 346 Ark. 475, 58 S.W.3d 840 (2001); *Paschal, supra.*

█ In setting the amount of child support that a noncustodial parent must pay, reference to the most recent child-support chart is mandatory. *Thompson v. Thompson,* 63 Ark. App. 89, 974 S.W.2d 494 (1998). The family-support chart is more accurately identified as Section VII of Supreme Court Administrative Order 10, *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines,* 347 Ark. Appx. 1064 (2002). Administrative Order Number 10 sets out the definition of income for child-support purposes and the manner of calculation of support. It also requires the parties to execute affidavits of financial means and lists factors the court should consider when determining support at variance to the chart. Although the court must consider the chart, it does not have to use the chart amount if the circumstances of the parties indicate another amount would be more appropriate. *Kelly v. Kelly,* 341 Ark. 596, 19 S.W.3d 1 (2000); *Stewart v. Winfrey,* 308 Ark. 277, 824 S.W.2d 373 (1992); *see also* Ark. Code Ann. § 9-14-106 (2002).

The trial court did not follow the guidelines in calculating Randall's income. The guidelines define income as "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest. . . ." *Administrative Order Number 10* § II. The guidelines are broad enough to allow the court to include income from sources it excluded such as the Genesis and AmSurg transactions in setting child support, *i.e.,* "[o]ther income or assets available to support the child from whatever source." *Id.,* § V(a)(12). In *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002), the supreme court ruled that a gift from the obligor's grandparents, a certificate of deposit, and a retirement payment all fell within this broad definition of income and that all prior decisions of this court were overruled to the extent they were inconsistent with that holding. Finally, Randall's use of a company vehicle for personal use was income for purposes of determining child support. *See Brown v. Brown, supra; Weir v. Phillips,* 75 Ark. App. 208, 55 S.W.3d 804 (2001). There was no evidence that the trial court considered this in setting support.

The guidelines further provide that, for self-employed payors, the amount of support shall be calculated based on the last two

years' federal and state income tax returns. The trial court clearly stated that Randall's income was calculated solely on the 2002 tax return. The trial court's decision to exclude the 2001 tax return because the *Genesis transaction* skewed Randall's income was, in essence, a deviation from the *guidelines* themselves. Although there is authority for a court to deviate from the chart amount of support, there is no authority for a trial court to deviate from the guidelines.

 After an obligor's income is determined, that income is applied to the chart based on the proper number of dependents. The chart itself establishes a rebuttable presumption of the appropriate amount that can be explained away only by written findings stating why the chart amount is unjust or inappropriate. *See Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993). We recognize that Randall's income exceeds the amount for which there is a specific entry on the child-support chart and that this necessitated a separate calculation in accordance with the child-support guidelines; however, we find that the same imperative applies regarding written findings for deviation from the level of support indicated by the guidelines. Because the trial court's findings as to Randall's income are clearly erroneous, we must reverse the child-support award and remand for the trial court to make correct findings.

*IV. Other Marital Property Issues*

 Cindy argues that the trial court erred in making an unequal division of other marital assets described in the first appeal. As stated above, this issue is reviewed under the clearly erroneous standard. Arkansas Code Annotated section 9-12-315 (Repl. 2002) provides that marital property is to be divided equally unless it would be inequitable to do so. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). If the property is divided unequally, then the court must give reasons for its division in the order. Ark. Code Ann. § 9-12-315(a)(1)(B) (Repl. 2002); *Harvey v. Harvey, supra*. The code also provides a list of factors the court may consider when choosing unequal division. Ark. Code Ann. § 9-12-315(a)(1)(A)(i)-(ix) (Repl. 2002). This list is not exhaustive. A trial judge's unequal division of marital property will not be reversed unless it is clearly erroneous. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).

Randall testified that the parties paid $15,000 in marital funds for a membership at Pinnacle Country Club. On remand, the trial court, without assigning a value, awarded this item to Randall. Randall also exercised an option to purchase a condominium for $325,000 after the parties separated but before the original divorce decree was entered. He testified that he purchased the condominium in January 2002 for $306,000, after receiving a discount because the sellers sold the property without a real estate agent. He also testified that $9000 of the discount was a credit for rent he paid during the marriage. The trial court found that "no marital assets were used to purchase the . . . condominium. . . ." The court did not make any further ruling on this item.

Cindy testified that she has resided in the marital home since the parties' separation and that she paid off the first mortgage on the house, totaling $49,858. She also testified that she reduced the second mortgage on the home by approximately $11,000. She also testified that, due to the age of the house, she has made $17,902 in repairs and requested to be reimbursed for those costs. The court made the parties tenants in common regarding the marital residence. Cindy was awarded possession of the residence until July 2005, after which time either party may petition to have the residence sold and the proceeds equally divided. Cindy was also made responsible for the mortgage payments, taxes, insurance, and the first $2000 of any individual repair. For any repair above $2000, the parties were to equally divide the expense above $2000.

The trial court's finding that no marital funds were used in Randall's purchase of the condominium was erroneous. Randall testified that the original purchase price of $325,000 was reduced by $9000 as a credit he paid for rent during the parties' separation. As we held in the first appeal, Randall acquired a marital asset when he acquired an interest in the condominium to the extent that the purchase price was reduced by his rental payments made with marital funds. Therefore, we reverse and remand on this issue and direct that the $9,000 be equitably divided between the parties.

We find no error in the disposition of the country-club membership. The club is not an equity club, and after a member resigns, there is no refund of membership fees. The membership is in the nature of a license to use the club's facilities and cannot be transferred. It has no tangible value to be divided.

■ Likewise, we cannot say that the trial court erred in the disposition of the marital residence. A trial court has discretion to determine whether an offset is appropriate when parties to a divorce expend funds to preserve marital property during the pendency of proceedings. *See Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993). It is acceptable to permit the parties to equally share the proceeds of sale after only one party has made the mortgage payments for a period of time. *Williams v. Williams, supra; Schumacher v. Schumacher,* 66 Ark. App. 9, 986 S.W.2d 883 (1999). When the house is sold, both parties will share in the equity resulting from Cindy's payment of the mortgage.

Affirmed in part; reversed and remanded in part.

ROBBINS and NEAL, JJ., agree.