James HUEY *v.* Sandra HUEY (SHEIRON)

CA 05-1254                                             239 S.W.3d 547

Court of Appeals of Arkansas
Opinion delivered September 20, 2006

[Rehearing denied October 25, 2006.*]

---

\* CRABTREE, J., would grant fees.

*Gibson & Hashem, P.L.C.*, by: *C.C. Gibson, III*, for appellant.

*Sara Hartness*, for appellee.

WENDELL L. GRIFFEN, Judge. This is the second appeal in this child-support modification case. Appellant James Huey is the custodial parent of the parties' daughter, Lauren (d.o.b. 3/2/87). Appellee Sandra Huey (Sheiron) is the noncustodial parent. The procedural history of this case was briefly recited in the previous appeal as follows:

> The parties were divorced in December 2001. Appellant is retired and receives social security income for himself and Lauren. He also owns stocks valued at approximately two million dollars. Appellee is a physician with her own family practice. In addition, she owns a chicken farm and numerous stocks. Appellant was initially awarded custody of Lauren, and appellee was ordered to pay child support of $132 per week and to pay an additional $85 per month for one-half of Lauren's health-and dental-insurance premiums.

*See Huey v. Huey*, 90 Ark. App. 98, 204 S.W.3d 92 (2005).

After appellee's request for reconsideration was denied on December 12, 2001, she filed a motion to reduce her child-support obligation and to abate her obligation to pay insurance premiums. Appellant thereafter filed a motion for contempt for appellee's failure to pay any child support after the entry of the divorce decree and for failure to pay her share of Lauren's health costs. Appellee was determined to be in contempt for failure to pay these costs as ordered.

In the first appeal, we affirmed the trial court's findings that a change of circumstances occurred warranting modification of child support, but reversed the trial court's reduction of child support from $132 per week to $24 per week. We reversed because the trial court failed to consider appellee's income for the first quarter of 2003, as mandated by Administrative Order Number 10 of the Child Support Guidelines. In reversing, we cited to authorities that made it clear the trial court was to consider all sources of appellee's income.

On remand, the trial court considered appellee's income and expenses for the first quarter of 2003, concluded that appellee's medical practice and horse farm operated at a loss during that period, and thus, determined that child support should remain at

$24 per week, the minimum allowed pursuant to the Child Support Chart. Appellant again appeals based on the amount of child support awarded.

We affirm that portion of the trial court's order awarding child support of $24 per week for part of 2002. However, we reverse the trial court's order of child support and remand for the trial court to enter an award of $135 per week beginning January 2003. We hold that the trial court erroneously concluded that appellee experienced a negative income during the first quarter of 2003 and improperly assessed additional expenditures that had already been accounted for in appellee's income report.

On remand after the first appeal, the trial court entered "additional findings" in letter form on July 14, 2005, as follows:

## I. Findings of Fact

*A careful review of [appellee's] income and expenses for the first quarter of 2003 indicate she continued to suffer a net loss.* The "Deposit Detail" exhibit indicates income during that period of $64,500.00. The "Expenses by Vendor Summary" exhibit indicates those expenses to be $39,238.61, after deduction of chemotherapy incurred by the husband of [appellee]. *However, the "Payroll Summary" exhibit indicates expenses of $18,160.17, after deduction of chemo-related payments. This amount is not included in the "Expenses by Vendor Summary." Further, a comparison of those income and expenses with the 2002 income tax return convinces the Court that many other expenses were not included in the "Expenses by Vendor Summary" exhibit. Those include insurance other than health, telephone, utilities, postage and legal and professional services. These items above amounted to $28,000.00 in 2002, one-fourth of which would be $7,000.00. In fact, if the first quarter of [appellee's] 2003 income and expenses are multiplied by four, there is very little difference from the totals indicated in the 2002 tax return. [Appellee's] medical practice suffered a loss that year, even after subtracting depreciation.*

It is not disputed that [appellee's] medical practice suffered losses in 2001 and 2002. *The Court finds that losses continued through the first quarter of 2003.*

## II.

The 2002 tax return indicates [appellee's] farm suffered a loss in 2002, even after excluding depreciation. She testified that the farm continued to lose money in 2003, and no evidence to the contrary was submitted.

### III.

The evidence submitted does not indicate there is equity in either the medical practice or the farm. [Appellee] is operating on borrowed money and owed approximately eight hundred thousand dollars at the time of the trial.

### IV.

The only other asset of [appellee's] is the Edward Jones account in the amount of ninety thousand dollars. She received several hundred thousand dollars of her portion of marital property. Only $90,000.00 is left and she hopes to use that for retirement. There is no evidence that such account is producing any income.

### Conclusions of Law
### I.

The Supreme Court's Administrative Order No. 10 requires this Court to consider every resource available to appellee. It has done so, and *finds no resources with positive values.*

(Emphasis added.) These findings were later adopted in a written order dated October 18, 2005, from which appellant now appeals.

Child-support cases are reviewed *de novo* on the record. *Cole v. Cole,* 89 Ark. App. 134, 201 S.W.3d 21 (2005). It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Id.* When the amount of child support is at issue, the appellate court will not reverse the trial judge absent an abuse of discretion. *Id.*

We recognized in the first appeal, and appellant does not dispute, that appellee experienced a negative income during 2001 and 2002. Accordingly, we affirm that portion of the trial court's order awarding child support of $24 per week from December 6, 2002, through the end of December 2002. However, we reverse that portion of the trial court's order relating to the child support award for 2003, and remand for the court to order an award of $135 per week beginning the first week of January 2003.

The trial court first erred in determining that appellee continued to suffer a negative income during the first quarter of 2003. In the prior appeal, we expressly recognized appellee's

testimony that her medical practice would experience a loss in 2003 was speculative and contrary to the information regarding her expenses and receipts during the first quarter of 2003. Nonetheless, on remand, the trial court failed to recognized that appellee's own evidence demonstrates that she had a positive income for the first quarter of 2003.

In determining appellee's income on remand, the trial court examined appellee's 2002 tax return and improperly determined that certain expenses that were present on the tax return were not present on appellee's expense summary for the first quarter of 2003, entitled "Expenses by Vendor Summary." The Vendor Summary was prepared by appellee for the purpose of obtaining a $600,000 loan from the Portland Bank, and on its face, included expenses that the trial court stated it did not contain — namely, payroll expenses and nonpayroll expenses, such as telephone services, utilities, postage, and professional services.

The trial court erroneously extrapolated and added approximately $7,000 in additional expenses that were *already accounted for* in the Vendor Summary report. The effect was to artificially inflate appellee's expenditures and, as a result, to artificially reduce her income. Once the duplicated expenses are removed from the calculation, appellee's records clearly demonstrate that her medical practice produced *positive* income for the first quarter of 2003. Further, common sense dictates that a person does not secure a $600,000 loan based on *negative* income.

Moreover, we are not inclined to agree with the trial court that the fact that appellee's horse farm operated at a loss warrants a decrease in child support where she otherwise has positive income from her medical practice. We cannot overlook the fact that appellee's farm is a voluntary operation on which she expended a substantial amount of money, while at the same time she failed to pay child support, failed to pay her share of the cost of her daughter's health insurance, and failed to even offer her daughter free medical care in her own clinic. For example, according to appellee's tax return, in 2002, she spent $43,075 on supplies for her horses and $1,106 on veterinary fees during the same time period in which she asserted that she could not pay child support. We cannot affirm an order that allows discretionary expenditures to circumvent the noncustodial parent's child-support obligation.

Based on our *de novo* review of appellee's proof of her actual income and expenses, and taking into consideration appellant's concession during oral arguments regarding a calculation error, we

determine appellee's income for the first quarter of 2003 to be $791.32 per week. According to the Child Support Chart, the presumptive amount of weekly child support for that income is $135.[1] Thus, we remand for the trial court to enter an order awarding child support beginning January 2003 in the amount of $135 per week.

Finally, both parties in this case request attorney's fees and costs. As appellee did not prevail, she is not entitled to attorney's fees or costs. We agree that appellant should be awarded $1,000 in attorney's fees for prevailing on this appeal.

Affirmed in part; reversed and remanded in part.

ROBBINS and CRABTREE, JJ., agree.

---

[1] In his brief, appellant asserted that appellee's income was $2,282.07 per month, as follows:

| | |
|---|---|
| First Quarter 2003 receipts | $64,500.00 |
| Less nonpayroll expenses | -39,238.61 |
| Less payroll expenses | -18,160.17 |
| Less one-half of Lauren's health insurance ($85/month) | -255.00 |
| First Quarter 2003 net income | $ 6,846.22 |
| Divided by three for monthly income | $ 2,282.07 |

As appellant correctly notes, child support at this level would be set at $99 per week because the weekly income would be $526.55 ($2,282.07/4.334 = $525.65). However, during oral arguments, appellant noted that a mistake was made in these calculations because the full expense for ten months of the State Volunteer Mutual Insurance Company was listed as $4,918, instead of the quarterly amount of $1,475.40 ($491.80 x 3=$1,475.40).

Accordingly, assuming this insurance costs is a nonpayroll expense, the figures should be adjusted as follows:

| | |
|---|---|
| First Quarter 2003 receipts | $64,500.00 |
| Less nonpayroll expenses | -35,796.01 |
| Less payroll expenses | -18,160.17 |
| Less one-half of Lauren's health insurance ($85/month) | -255.00 |
| First Quarter 2003 net income | $10,288.82 |
| Divided by three for monthly income | $ 3,429.60 |

The monthly income of $3,429.61, in turn, equals $791.32 weekly. The presumptive weekly child support at this income level is $135.00. *See* Admin. Order No. 10, Child Support Chart.