2013 Ark. App. 151
**Randy RUSSELL, Appellant**

v.

**Andrea RUSSELL, Appellee.**

**No. CA 12–331.**

Court of Appeals of Arkansas.

Feb. 27, 2013.

Smith, Cohen & Horan, PLC, Fort Smith, by: Matthew T. Horan, for appellant.

Gean, Gean & Gean, Fort Smith, by: David Charles Gean, for appellee.

WAYMOND M. BROWN, Judge.

Appellant appeals from the circuit court's divorce decree and the denial of his motion for a new trial. He argues on appeal that (1) the divorce decree was unlawful because it ordered him to buy corporate shares in a family business from appellee instead of distributing existing property and (2) appellee offered no competent evidence to prove that the business had a fair market value independent of the personal goodwill of appellant's stepfather. We affirm.

Appellant and appellee were married in July 1996. The two separated in July 2006, and appellant sued for divorce in August 2006. Appellee filed a counterclaim on October 24, 2006.[1] She also moved for temporary alimony on November 15, 2006, which was granted for the amount of $200 per week in an order dated January 30, 2007. During the course of the marriage, appellant and his two brothers[2] each bought a third of the shares in their stepfather's business, American Lenders Services Company, Inc. The company later came to be known as National Recovery Specialists, Inc. (NRS). Appellant and appellee stipulated that appellant owned a 99/300th interest in A.L.S.C.O.F.S., Inc., and NRS. Appellant and appellee entered into a property division agreement regarding all property except appellant's interest in NRS. Trial was set for the purpose of determining the value of appellant's stipulated interest in NRS.[3]

---

1. Appellee also filed a third party complaint against Rodney Colquitt, Ron Colquitt, Betty Colquitt, and Glynn Colquitt on May 4, 2010. She filed a second third party complaint against RARO Investments, LLC, A.L.S.C.O.F.S., Inc., and National Recovery Specialists, Inc., on August 10, 2010.

2. Based on tax returns, the company was actually owned by appellant, his two brothers and their mom. Appellant, according to tax returns, owned 32.67%, Rod Colquitt owned 32.67%, Ron Colquitt owned 32.66%, and Betty Colquitt owned 2% of the business.

3. The trial was also for the purpose of determining whether appellant was behind in his

At a pre-trial deposition,[4] Joe Webb, a certified public accountant and expert witness for appellee, testified regarding his report showing a calculation of NRS as of December 31, 2010.[5] He stated that a calculation is not intended to be relied upon by any third-party besides himself and his client. He testified that if he were doing a valuation of NRS, he would discuss general economic conditions, industry-specific risks as well as company-specific risks, a standard value for the shares, and goodwill. He testified that he did none of these things because his calculation, being based on an agreement between himself and appellee on the numbers to be used, did not require that he apply them. He testified that he dropped the Mergerstat average control premium of 29.6% to 10% because appellant appeared to have some control over cash flow, though he admitted that a buyer of 16.67% of his shares would not expect that control of cash flow would follow their purchase and might discount the value by 50%. He applied a 5% marketability discount though he testified that a buyer would look for a deep discount ranging from 30%–40%. He specifically stated that he "chose the discounts to apply, but [he] did not employ industry standards."

At trial, Webb testified that he discounted the value of NRS by 10% and not the average Mergerstat value because the three shareholders all had control evidenced by the fact that they each took out money from the company. He did not apply a separate marketability discount, though he testified that the average marketability discount is 35%. He stated that marketability and lack of control are not distinguishable. He further discounted the value by 6%, which factored in the possible sale of HRSI to Capital One, an amount which he thought was high. He applied no personal goodwill discount for he believed Glynn Colquitt was not the owner of NRS and therefore could not hold personal goodwill.

Also testifying at trial was David Potts, a certified public accountant and expert witness for appellant. He testified that he prepared a fair market valuation of 33% of NRS complying with all industry standards. He used an income-based approach, instead of one of two other possible approaches because NRS is an operating business[6] and he could not find enough sales of other comparable businesses.[7] Potts found the value of 100% of NRS to be $3,028,000 under the income method. That meant appellant's 33% interest was worth $1,008,324. He then applied a 30% discount for lack of control and a 35% discount for lack of marketability, which reduced the value of appellant's 33% interest to $458,787. After rounding down to $458,000, he estimated that appellee's 1/6 interest, half of appellant's 1/3 interest, would be $229,000. He then discounted the goodwill of the company again, finding that enterprise goodwill was approximately only 50% with the other 50% being personal goodwill to appellant's stepfather, Glynn

---

payments of previously awarded temporary alimony. This issue is not before us on appeal.

4. Webb's testimony from the pre-trial deposition was used in appellant's motion in limine to exclude Webb from testifying at trial.

5. Appellant filed a motion in limine on October 7, 2011, to exclude testimony of appellee's expert, Joe Webb, CPA. The record does not

show an order from the court specifically addressing this motion, but Mr. Webb does testify at the trial, so we assume the motion was denied.

6. Potts testified that the asset approach is most valid for non-operating businesses.

7. Potts testified that the market approach requires sales of comparable businesses.

Colquitt. After the discount, he valued appellee's 1/6 interest to be worth no more than $115,000. He testified that his total valuation of the company was based on Glynn Colquitt remaining with the company.

Appellee testified that HSBC, NRS's one client, had bought HRSI, which had bought Household Bank, the company that NRS initially started doing business with. She acknowledged that Capital One was acquiring HSBC, but she stated that NRS had kept the business with each prior change, presumably implying that the same would happen again. She asserted that compliance with HSBC requirements was extremely important and outweighed any personal relationship. Following appellee's testimony, all testimony was concluded and the court announced it would decide the issues after reviewing the evidence before it.

In an order filed October 13, 2011, the court accepted the appellant and appellee's stipulation that appellant owned a 99/300th interest in A.L.S.C.O.F.S., Inc., and NRS.[8] In a letter filed the same day, the court found NRS to be valued at $3,028,000 as both parties agreed to that valuation. It found that, though Glynn Colquitt was the owner of record, it was not contested that appellant and his stepbrothers purchased an equitable interest in the company in 1996. It concluded that, considering all the testimony and exhibits on value, appellee's interest in the business was worth $272,875. The court then ordered "alimony" in the amount of $11,370 per month for a period of twenty-four months due to the unequal property division. A divorce decree reflecting the court's findings, as ex-plained in the letter, was filed on December 8, 2011.

Appellant filed a timely motion for a new trial on December 22, 2011, objecting to the findings and the award of "alimony in gross" to pay for non-marital personal goodwill. In his brief supporting the motion, he further objected that the decision to award all shares to appellant was not supported by a factual finding as required by Ark.Code Ann. § 9–12–315(a)(1)(B). The motion was deemed denied on January 21, 2012, when the trial judge did not act on it. Appellant filed a timely notice of appeal on February 1, 2012.

Appellant filed a motion to remand the case on May 22, 2012, to complete the record. This court entered an order remanding the matter to the circuit court to settle the record on June 20, 2012. The circuit court entered an order on June 21, 2012, finally dismissing all claims by and against Ron Colquitt, Rod Colquitt, Glynn Colquitt, Betty Colquitt, RARO Investments, LLC, and A.L.S.C.O.F.S., Inc. a/k/a National Recovery Specialists, Inc., as third party defendants. The same order ratified the December 8, 2011 divorce decree as its final decree and denied appellant's motion for a new trial on the record so that is was no longer simply deemed denied.

On June 22, 2012, appellant filed a second timely notice of appeal from the June 21, 2012 order and the December 8, 2011 divorce decree. This court remanded the matter for rebriefing because appellee's brief was not in compliance with Arkansas Supreme Court Rule 4–2, which requires parties to refer to the appropriate page number in the abstract when citing testi-

---

8. In this same order, the court dismissed third party defendants A.L.S.C.O.F.S., Inc., National Recovery Specialists, Betty Colquitt and Glynn Colquitt from the action without prejudice. It specifically stated that the order did not cover RARO Investments, LLC, Ron Colquitt or Rodney Colquitt. Rodney Colquitt and RARO Investments, LLC, were dismissed from the action with prejudice in a separate order filed October 13, 2011.

mony and other abstracted material.[9] Having submitted a sufficient supplemental abstract, brief and addendum, this court now addresses the merits.

On appeal, divorce cases are reviewed de novo [10]. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony.[11] With respect to the division of properly in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous.[12] The division of property itself is also reviewed, and the same standard applies.[13] A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made.[14] In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless.[15]

▮ Appellant's first argument is that the trial court entered an unlawful decree obliging appellant to buy corporate shares from appellee at their inferential value instead of simply distributing existing marital property. Arkansas Code Annotated section 9–12–315 provides in subsection (a) that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable.[16] Arkansas Code Annotated section 9–12–315 provides in subsection (a)(4) that when stocks are involved:

> the court shall designate in its final order or judgment the specific properly in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one (1) party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.[17]

The court has broad powers to distribute properly in order to achieve a distribution that is fair and equitable under the circumstances; it need not do so with mathematical precision.[18]

▮ Alimony and property divisions are complementary devices that a circuit court employs to make the dissolution of a marriage as equitable as possible.[19] The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each

9. *Russell v. Russell,* 2012 Ark. App. 647, at 1, 2012 WL 5451806.

10. *Cummings v. Cummings,* 104 Ark.App. 315, 323, 292 S.W.3d 819, 823 (2009) (citing *Cole v. Cole,* 89 Ark.App. 134, 201 S.W.3d 21 (2005)).

11. *Id.* at 324, 292 S.W.3d at 823–824.

12. *Id.* at 324, 292 S.W.3d at 824.

13. *Hernandez v. Hernandez,* 371 Ark. 323, 327, 265 S.W.3d 746, 749 (2007) (citing *Farrell v. Farrell,* 365 Ark. 465, 231 S.W.3d 619 (2006)).

14. *Id.*

15. *Id.*

16. *Johnson v. Johnson,* 2011 Ark. App. 276, at 8, 378 S.W.3d 889, 895; Ark.Code Ann. § 9–12–315(a)(1)(A) (Repl.2009).

17. (Repl.2009).

18. *Johnson,* 2011 Ark. App. 276 at 9, 378 S.W.3d at 895 (citing *Coatney v. Coatney,* 2010 Ark. App. 262, 377 S.W.3d 381).

19. *Cummings,* 104 Ark.App. at 324, 292 S.W.3d at 825 (2009) (citing *Cole, supra* ).

case.[20] The overriding purpose of the property-division statute is to enable the court to make a division of properly that is fair and equitable under the circumstances.[21]

This court has indicated that the characterization of installment payments made pursuant to an award in a divorce decree depends on the circumstances surrounding the award.[22] In *Snyder v. Snyder*, the court looked to the facts in *Stout v. Stout*, and stated that:

> the chancellor awarded the wife "alimony" in the amount of $300 per month for a period of one year. The court pointed out that an "award of alimony in a gross sum payable in installments is contrary to its long established rule that alimony should not be a fixed sum but a continuing allowance payable at regular intervals." The court then concluded that even though the decree referred to the award as alimony, the payments were not an award of alimony "in gross," when all the circumstances were considered.[23]

The circumstances in this matter are that neither party requested or testified regarding alimony and the court below made no reference to any economic imbalances in its divorce decree. Like the "alimony" payments in *Stout*, the payments characterized as alimony here are actually periodic distributions of a court-ordered marital property division. Because the payments are not alimony, we do not address any of appellant's arguments in support of his argument that the trial court entered an unlawful decree which deal with the court's alleged error in awarding "alimony."

While appellant argues that the divorce decree was unlawful because it ordered him to buy corporate shares in a family business from appellee instead of distributing existing property, no evidence was submitted by either party showing that appellee owned any shares. Neither party asserted, or presented any evidence, that appellee owned any interest in the company, only that she was owed 1/2 of appellant's 1/3 interest as marital property.[24] Both parties stipulated that appellant owned a 1/3 of the business, specifically a 99/300th interest. The stipulation asserts that appellant, alone, owns an *interest*. The court accepted this stipulation. The court's decree simply required appellant to give appellee half the value of what he already owned.

Appellant also argues that appellee offered no competent evidence to support her burden that NRS had a "fair market value" independent of the personal goodwill of Colquitt. The valuation of goodwill is a question of fact that depends upon the particular circumstances.[25] The strength or lack of strength of the evidence on which an expert's opinion is based goes to the weight and credibility, rather than to the admissibility, of the

**20.** *Burns v. Burns*, 2011 Ark. App. 312, at 4, 383 S.W.3d 458, 460 (citing *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988)).

**21.** *Wright v. Wright*, 2010 Ark. App. 250; at 7, 377 S.W.3d 369, 374 (citing *Hoover v. Hoover*, 70 Ark.App. 215, 16 S.W.3d 560 (2000)).

**22.** *Snyder v. Snyder*, 13 Ark.App. 311, 313, 683 S.W.2d 630, 631 (1985) (citing *Stout v. Stout*, 4 Ark.App. 266, 630 S.W.2d 53 (1982)).

**23.** *Id.*, 683 S.W.2d at 631–32.

**24.** Appellee was employed by NRS at the time divorce proceedings were initiated by appellant, but was terminated four months later.

**25.** *Cole v. Cole*, 89 Ark.App. 134, 140–141, 201 S.W.3d 21, 25 (2005) (citing *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Williams v. Williams*, 82 Ark.App. 294, 108 S.W.3d 629 (2003)).

opinion in evidence.[26] Where the testimony shows a questionable basis for the opinion of the expert, the issue becomes one of credibility for the fact-finder, rather than a question of law.[27] The fact-finder may accept or reject all or any part of the testimony of expert witnesses.[28]

The court heard testimony from appellee's expert witness as to a calculation that didn't follow the industry standards, but instead applied discounts pursuant to his agreement with appellee. Still, appellee's expert agreed with appellant's expert that the value of 100% of the company was $3,028,000. Appellant's expert witness testified to the company's fair market value. Furthermore, appellee testified that compliance outweighed personal relationships and appellant testified that HSBC liked NRS because it could make HSBC's desired changes more quickly than competitors. We find that the circuit court had competent evidence before it to show the fair market value of appellee's 1/6 interest in NRS; therefore we cannot say that the trial court's valuation was clearly erroneous.

In any case, appellant was free to present evidence that might reduce the value of the company, such as documents to support his claim that HSBC, NRS's one client, had reduced NRS's number of assignments. Or he may have submitted evidence from HSBC that it was downsizing, as testified to by Potts, and that it would affect NRS. Appellant submitted no evidence tending to show that the value of the company was incorrect or that it needed to be reduced. While finding that the circuit court's award was a division of property and not alimony, this court affirms as modified.

Affirmed as modified.

WALMSLEY and GLOVER, JJ., agree.

26. *Winn v. Winn Enters., Ltd. P'ship,* 100 Ark. App. 134, 141, 265 S.W.3d 125, 129 (2007) (citing *Killian v. Hill,* 32 Ark.App. 25, 795 S.W.2d 369 (1990)).

27. *Id.*

28. *Cole,* 89 Ark.App. at 141, 201 S.W.3d at 25 (citing *W. Union Tel. Co. v. Byrd,* 197 Ark. 152, 122 S.W.2d 569 (1938)).