2011 Ark. App. 312

**Rebecca BURNS, Appellant**

v.

**Terry BURNS, Appellee.**

**No. CA 10–1102.**

Court of Appeals of Arkansas.

April 27, 2011.

Denny Paul Petty, Searcy, for appellant.

Robert M. Abney, Des Arc, for appellee.

DAVID M. GLOVER, Judge.

Appellant Rebecca Burns and appellee Dr. Terry Burns were married in 1984, separated in 2003,[1] and commenced divorce proceedings in 2008. A decree of divorce was entered on January 8, 2010, under the terms of which the marital residence and the marital personal property were ordered to be sold at auction; Dr. Burns was ordered to pay Mrs. Burns $31,194, which constituted one-half of the equity in Dr. Burns's current residence in Hardy (which he holds in joint tenancy with Tami Bellah); Dr. Burns was ordered to pay Mrs. Burns one-fourth of the value of a Kubota tractor (in which he was a one-half owner); Dr. Burns's Fidelity SEP-IRA, AIG retirement account, and ING 401(k) account were ordered to be divided equally; and Mrs. Burns's Fidelity retirement account and Stephens investment account were ordered to be divided equally; Mrs. Burns was ordered to continue making monthly payments on the parties' three outstanding credit-card balances (until the marital property sold—the balances would be satisfied from the proceeds of that sale); and Dr. Burns was required to pay $2500 per month in spousal support (until the final hearing on alimony). The trial court reserved the issue of attorney's fees until the final hearing on alimony.

An order of modification was filed of record on April 2, 2010, in which the trial court found that the parties had agreed to a division of the personal property; Dr. Burns was ordered to assume the outstanding indebtedness on the Ford 250 pickup truck and the Chevrolet Tahoe (both of which were in his possession); Mrs. Burns had waived any interest in the Kubota tractor; and that "any issue of medical costs as of the date of the filing of the parties' divorce decree has either been paid or been placed upon credit cards that

are to be satisfied from the sale of marital property pursuant to Paragraph Thirteen of the parties' original agreement."

The hearing on alimony and attorney's fees was held on April 29, 2010. On May 17, 2010, the trial court issued a letter opinion in which it made the following findings of fact:

1. The parties have been married for over 25 years but have lived separate and apart since 2005.

2. The parties were divorced on December 11, 2009, with the issues of alimony and attorney fees reserved for a later hearing.

3. During the approximately 5 years of separation, [Dr. Burns] has paid for [Mrs. Burns's] house, car and provided [her] with an average of $2,068.00 per month.

4. [Mrs. Burns] has held no significant jobs during the marriage but, in spite of her recent health issues, it was not proven that she could not be employed in some capacity.

5. [Mrs. Burns] has significant equity in the marital home which she now owns as her own separate property.

6. [Mrs. Burns] has approximately $200,000 in cash or its equivalent from the marriage.

7. [Mrs. Burns] has left the marriage with minimal debt.

8. [Mrs. Burns] is entitled to significant social security benefits at retirement age.

9. [Dr. Burns's] average annual income for the last four (4) years is $143,500.00 based upon [Dr. Burns] working 50+ hours per work week.

Based upon those findings of fact, the trial court determined that Mrs. Burns

---

1. The trial court's letter opinion found that the parties separated in 2005.

was entitled to an award of alimony, that Dr. Burns had the ability to pay alimony, and that Mrs. Burns was employable and had the ability to earn at least a modest wage. The trial court granted Mrs. Burns alimony in the amount of $2750 per month and ordered Dr. Burns to pay $3500 of Mrs. Burns's attorney's fee. These findings were incorporated into an order establishing alimony and awarding attorney's fees, filed of record on July 9, 2010. After the trial court issued its letter opinion, but prior to the order being filed, Mrs. Burns filed a motion for reconsideration on June 25, 2010; this motion was denied on July 8, and Mrs. Burns filed her notice of appeal on August 4, 2010.

On appeal, Mrs. Burns argues that the trial court's award of alimony was based upon clearly erroneous findings and constituted an abuse of discretion, and that the award of $3500 in attorney's fees was also an abuse of discretion. We hold that the trial court abused its discretion in the award of $2750 per month in alimony and reverse and remand on that issue, but we affirm the award of attorney's fees.

## Alimony

The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). In fixing the amount of alimony to be awarded, the trial court is given great discretion, and the appellate courts will not disturb the award on appeal unless there is an abuse of that discretion. *Rachel v. Rachel*, 294 Ark. 110, 741 S.W.2d 240 (1987). The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Bracken v. Bracken*, 302 Ark. 103, 787 S.W.2d 678 (1990). Second-

ary factors to be considered by the trial court include (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of both parties; (4) the earning ability and capacity of both parties. *Hiett v. Hiett*, 86 Ark.App. 31, 158 S.W.3d 720 (2004). While the amount of alimony awarded should not be reduced to a "mathematical formula" because the need for flexibility outweighs the need for relative certainty, the trial court should nonetheless consider the total income of both parties, from whatever source, in making an alimony determination. *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002).

In this case, the parties were married for more than twenty-five years. Dr. Burns is a general practitioner, and Mrs. Burns had not worked for the past twenty years of the marriage. At the time of the hearing, Mrs. Burns was fifty-one, and Dr. Burns was fifty-three.

Dr. Burns testified that he currently worked fifty-four hours per week as a physician for White River Health System, but that at some point in time he would have to cut his hours because he could not continue to work at that pace. He also testified that if something happened to him, and Mrs. Burns had reached the age of retirement, she would receive a survivor benefit from Social Security of $2399 per month. He testified that he was fifty-three years old; that he would have to work until he was sixty-six in order to draw Social Security; but that he hoped to work past that age if his health allowed him to do so.

Dr. Burns said that in 2009 he had been paying Mrs. Burns $2200 per month, an amount he believed was sufficient and fair to maintain her lifestyle at that time, but that he increased the payment to $2500

per month pursuant to the trial court's order. He testified that he felt that $2200 a month was more than a fair amount for having a house that was paid in full, for a vehicle that was paid off, and for not having to work at all. His testimony was that the only money available for use by Mrs. Burns was what he sent her plus what she charged on credit cards. However, he acknowledged that he had paid Mrs. Burns between $3500 and $4500 per month in 2005, with the average being $3920 per month based on his calculations. He testified that he paid approximately $3500 per month in 2006, and that in 2007 he used $23,300 of proceeds from his sale of a house in Cherokee Village to pay off the marital residence. He stated that even though the marital home had been paid off, Mrs. Burns had been required to borrow money to purchase his equity in that property, resulting in a house payment now for her of between $700 and $800 per month. He also agreed that Mrs. Burns would need another car eventually (something he acknowledged that he had provided for her during the marriage) and that she would have a car payment at that time. In fact, Dr. Burns was of the opinion that Mrs. Burns would have a car payment for the rest of her life.

Dr. Burns also acknowledged that Mrs. Burns had some health issues, including a past bout with thyroid cancer and adrenal fatigue syndrome, and that he had taken her off of his health insurance in 2008 without first informing her. He offered his opinion that Mrs. Burns was not currently insurable, and that she should either marry someone who has insurance or go to work for an employer who has a group-health insurance plan. He admitted that she had not worked for twenty years, stating, however, that she did have her high school diploma, and offering his further opinion that it was reasonable that she could return to the workforce, although not as a highly paid professional.

Mrs. Burns testified that she purchased the marital home at auction for $195,000, which required her to take out a mortgage that currently had a $105,857.54 balance. She stated that Dr. Burns had helped on house repairs, when she asked, such as a new roof and water heater, but that she was now struggling to pay the bills. She offered her own opinion that she was physically unable to work (although she volunteers approximately one day per week for the Humane Society), and she stated that she did not plan to reenter the workforce in the foreseeable future due to her health and the fact that she had not worked in over twenty-five years. She testified that as of the hearing, her American Express had a $5,784.27 balance, and her VISA had a $9,648.73 balance. In addition to her thyroid cancer and adrenal fatigue syndrome, Mrs. Burns testified that her medical conditions included shingles, heart valve leakage, several bouts with skin cancer, and the need for regular medical checkups, including colonoscopies and mammograms.

Mrs. Burns testified that she calculated her expenses to be $76,896 annually, excluding any money with which to pay taxes on the alimony. It was her estimate that she needed a net figure of $8,522.59 per month in alimony to "somewhat" keep her in the same standard of living that she enjoyed when she was married to Dr. Burns. Her budget included medication costs, property taxes, vehicle payments, house payment, other living expenses, and a quote she received of $1349 per month for health insurance. She also testified that she had paid $15,000 in attorney's fees, and that she still owed over $10,000.

The trial court should consider the total income of both parties, from whatever source, in making an alimony determina-

tion. *Davis, supra.* According to the parties' tax returns, Dr. Burns's 2004 W–2 wages were $197,159; his 2005 W–2 wages were $275,774; his 2006 W–2 wages were $262,842; his 2007 W–2 wages were $263,438; his 2008 W–2 wages were $252,022; and his 2009 W–2 wages were $240,081. Mrs. Burns had no wages during those years. In light of the documentary evidence of Dr. Burns's W–2 wages and taxes withheld, we hold that there is no factual basis for the trial court's finding that Dr. Burns's average annual income for the last four years was $143,500.

Other factors addressed by the trial court in awarding alimony were not fully analyzed. First, the trial court found that Mrs. Burns had significant equity in the marital home that she now owns as her separate property and that she had left the marriage with minimal debt. However, the trial court failed to consider that Mrs. Burns was required to take out a mortgage of over $105,000 on the home to pay Dr. Burns his equity in the house.

Next, we note Dr. Burns's testimony that he paid Mrs. Burns between $3500 and $4500 per month during the time there was still a house payment and a car payment—while those were eventually paid off, there is now a new mortgage, i.e., a house payment, on the house and, by Dr. Burns's own assessment, Mrs. Burns will have a car payment for the rest of her life. Though the trial court correctly noted that Mrs. Burns was granted approximately $200,000 from the marriage, the parties divided the marital property equally, so Dr. Burns received that same amount. Also, the trial court found that Mrs. Burns is entitled to "significant" social security benefits at retirement age; however, she was fifty-one years old at the time of the hearing. She will have to wait at least twelve years before she can collect this income, if she is able to collect benefits at that time. Finally, while the trial court found that Mrs. Burns held no significant jobs during the marriage, it still found that she could be employed in some capacity; even if this is so, it is doubtful that she could earn a meaningful wage. All of these factors, taken together, compel us to hold that the trial court's amount of alimony is clearly erroneous, and we reverse and remand on this issue for the trial court to consider these factors in awarding alimony to Mrs. Burns.

### Attorney's Fees

Mrs. Burns also argues that the trial court's award of only $3500 of her attorney's fees was clearly erroneous. The only evidence offered was her testimony that she had paid $15,000 in attorney's fees and still owed $10,000. An award of attorney's fees is reviewed for an abuse of discretion. *Rachel, supra.* On this record, we find no abuse of discretion in the trial court's award of $3500, and we affirm the trial court's decision on this issue.

Affirmed in part; reversed and remanded in part.

PITTMAN and ROBBINS, JJ., agree.