2012 Ark. App. 122

**Suzanne P. DEW, Appellant**

v.

**Terry L. DEW, Appellee.**

**No. CA 11–12.**

Court of Appeals of Arkansas.

Feb. 8, 2012.

James L. Tripcony, Little Rock, for appellant.

Barry Eugene Coplin and Jocelyn A. Stotts, Little Rock, for appellee.

JOHN B. ROBBINS, *Judge.*

This is a divorce case. Appellant Suzanne Dew asserts error in the circuit court's distribution of the parties' property. Appellee Terry Dew brings a cross-appeal challenging the award of alimony to Suzanne. We affirm on direct and cross-appeal.

The parties, who were married in May 1995 and separated in June 2008, are the parents of two children, born in 1992 and 1998. They own a large tract of land in Knoxville, Arkansas, on which are located two houses, the "Dew Residence" and the "Doxa Retreat," and a farm, 130 acres known as the "Dew Farm." They own other real property in Pope and Johnson Counties.[1] They are both veterinarians. Suzanne primarily stayed at home with the children, while Terry's surgical practice was very successful. At the time of trial, he practiced in Russellville in a leased clinic building.

Trial was held on January 21–23, 2009, and September 23–24, 2009. In March 2010, Terry filed a motion for the court to enter a decree. The court held a hearing on April 16, 2010. The circuit court entered the divorce decree on May 14, 2010, awarding the divorce to Terry on the grounds of general indignities. The court ordered him to pay $8000 per month for forty-eight months to Suzanne for rehabili-

---

1. Title to some of their real property was held by Parsel Properties, LLC.

tative alimony. It awarded custody of the children, with Suzanne's agreement, to Terry, and ordered Suzanne to pay him $1198 in monthly child support, based upon her net alimony income from him ($6025). The court ruled that Terry would retain sole ownership and control of his businesses, Azzore Veterinary Specialists, LLC, and Azzore Veterinary Surgery (collectively "Azzore") and all of the businesses' assets, including the leasehold interest in the clinic property, which included an option to purchase; Terry would be solely responsible for all business debts. It directed Terry to pay Suzanne $2500 for her marital interest in the $5000 escrow deposit on the clinic property.

The circuit court awarded the Doxa Retreat and four contiguous acres to Suzanne. It awarded Terry the marital home, the Dew Residence, and five contiguous acres. The court directed each party to be responsible for the indebtedness on the property awarded to him or her. It ruled that the parties would hold the Dew Farm as tenants in common. It also awarded the real property and improvements located on Aspen Lane in Russellville to the parties as tenants in common. The court made the same distribution of approximately fifty acres in Johnson County (the Perry Bluff property).[2]

The court awarded Terry the miscellaneous assets, including ownership of the assets of OncoPet, his interest in the Pulaski County Animal Emergency Clinic, and the tax credit from the parties' 2008 individual income tax returns; Terry would be solely responsible for any additional taxes for 2008.[3] The court directed that Terry's accountant would consult with Suzanne's accountant, and in the event of a disagreement, Suzanne's accountant would prevail.

The court stated that the parties would modify the equalization of their assets set forth in Plaintiff's Exhibit O (Assets and Liabilities Summary), based upon the accountants' adjustment of tax liabilities for 2008. The court also ruled that the marital portions of the parties' retirement accounts would be valued as of the date of the parties' divorce and equally divided between the parties. The court ruled that Suzanne would retain their health savings account, the Regions joint account, her personal checking accounts, the Caneystone checking account, and her Morgan Keegan savings account. Terry would retain his First State Bank checking account and the Regions operating account for Parsel Properties, LLC. The court ordered the parties to equally divide their assets in the Morgan Keegan joint investment account. The court stated that it intended to implement an approximately equal division of the parties' total assets and liabilities:

> Taking into consideration the agreed upon adjustment to the tax liabilities for 2008, the equalization of the parties' total assets and liabilities shall be implemented by the plaintiff paying to the defendant the sum of $51,631 in cash within 30 days of the division of the assets in their Morgan Keegan joint investment account.

It directed the parties to agree on the division of the rest of their personal property within thirty days.

Suzanne moved for new trial on May 20, 2010, arguing that the trial court did not equally divide the parties' marital property or justify its failure to do so in compliance with Arkansas Code Annotated section 9–12–315. She also asserted that the award of the Dew Residence, which the parties had purchased in 1995, to Terry contravened the pre–1997 version of Arkansas

2. The court directed that Parsel Properties be dissolved after transfer of the property.

3. The parties agreed to file joint income tax returns for 2008.

Code Annotated section 9–12–317, under which she was entitled to a one-half interest in the property. Suzanne also argued that the court erred in awarding to Terry the option to purchase the clinic building without articulating a reason for divesting her of her interest in it. She further alleged that a business insurance policy effective October 1, 2009, containing declarations of $534,500, constituted newly-discovered evidence. She argued that this policy rendered Terry's assertions that his businesses had a negative value incredible and that she could not have discovered and produced the policy at trial because it was purchased within days after trial. In response, Terry pointed out that he was awarded $564,989, while Suzanne was awarded $461,727 in accounts and property, and he was ordered to pay her $51,631 to equalize the division. He also argued that Suzanne had raised the section 9–12–317 issue for the first time in the motion for new trial. He asserted that the purchase of the insurance policy after trial was not a proper basis for a new trial and pointed out that Suzanne had elected not to introduce the previous policy that was in effect at the time of trial. He further argued that the lease option was not an asset subject to division because he was not in the process of exercising the option at the time of the divorce. He stated: "The plaintiff ... may never exercise the option because to do so would require him to pay $450,000 to receive at most a $12,000 credit. The plaintiff purchasing the building is a future expectation...." The court held a hearing on the motion for new trial on June 17, 2010. After the court denied this motion, Suzanne pursued this appeal, and Terry filed a cross-appeal.

## I. Direct appeal

### A. Distribution of the Marital Property

Suzanne begins her appeal by asserting that, in spite of the circuit court's stated intention to equally divide the parties' assets, it failed to do so. She acknowledges the court's ruling that the Dew Farm, Aspen Lane, and Perry Bluff real property would be held as tenants in common, and that the household goods, nonbusiness personal property, escrow deposit, Morgan Keegan investment account, and the retirement accounts were equally distributed, but asserts that the remaining assets were not divided equally. Suzanne argues that, if this court affirms the trial court's decree, she would receive a total of $225,275 worth of assets (the Doxa Retreat, the health savings account, the Regions and Caneystone checking accounts, and the Morgan Keegan savings account). She also asserts that the value of the Dew Residence, Parsel Properties' operating account, the 2008 tax overpayment, custodial accounts for the parties' children, and the Regions/First State checking account amounted to $333,173. To this subtotal, she adds the award to Terry of 100 percent of Azzore, the option to purchase Azzore's office building, the Pulaski County Animal Emergency Clinic, and OncoPet. She states:

> In exchange for all of these business interests, the circuit court awarded Suzanne a cash sum of $51,631 plus an extra $2,500.00 for her marital interest in the $5,000 escrow deposit returned to Terry in connection with the Parkway Clinic. Suzanne contends that this distribution of assets is grossly inequitable.

To the $333,173 figure, Suzanne adds $126,287 for the September 24, 2009 amounts in AVX's First State Operations, merchant and setback accounts, along with the First State checking and Azzore Regions Operating accounts; at this point, her subtotal equals $459,460. To this amount, she adds an additional $41,153 for

business assets (equipment, furniture, software, telephone system, and supplies). Thus, according to Suzanne, the total value of the property awarded to Terry was $500,613.

Suzanne primarily disputes the trial court's findings of fact about the value of Terry's businesses. She acknowledges that the parties introduced "widely conflicting" evidence about the value of the business assets. She asserts that the circuit court did not assign a value to any of the parties' assets and that it is impossible for this court to determine whether she received an equal share of the marital assets. She argues that, because the record is not fully developed, we should remand to the trial court to receive additional evidence and make findings regarding the valuation of all of the parties' assets. She states: "In the final analysis, it is the practice's fair market value which must be determined if the parties' assets are to be divided equally." She states that Terry's expert, Dr. Elry Phillips, addressed the practice's "fair value," not its fair market value, and that the circuit court approved that method of valuation; thus, the court focused on the orderly-disposition value of his practice's component assets, as if Terry were to liquidate those assets piecemeal on the date the divorce was granted. She contends that Terry's practice should be valued as a going concern, which she distinguishes from personal goodwill (which is not transferable or divisible in a divorce proceeding). She states: "The value of Terry's veterinary practice is more than the mere sum total of its tangible assets that can be seen, touched, or counted. Consideration of the practice as a whole entity is required." Suzanne also argues that the trial court erred in not taking into account the amount spent on leasehold improvements ($103,000, according to Suzanne) in valuing Terry's practice.

On appeal, divorce cases are reviewed de novo. *Friend v. Friend,* 2010 Ark. App. 525, 376 S.W.3d 519. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.* Arkansas Code Annotated section 9–12–315(a) (Repl.2009) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." The court may make some other division that the court deems equitable; however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order. Ark.Code Ann. § 9–12–315(a)(1)(B). The court has broad powers to distribute property in order to achieve a distribution that is fair and equitable under the circumstances; it need not do so with mathematical precision. *Bamburg v. Bamburg,* 2011 Ark. App. 546, 386 S.W.3d 31; *Gilliam v. Gilliam,* 2010 Ark. App. 137, 374 S.W.3d 108. The critical inquiry is how the total assets are divided. *Robinson v. Robinson,* 2011 Ark. App. 624, 2011 WL 5110198; *Copeland v. Copeland,* 84 Ark.App. 303, 139 S.W.3d 145 (2003). The circuit court is not required to mechanically divide the marital property in kind. *Gilliam, supra.* We will not substitute our judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong. *Id.*

The supreme court has explicitly approved the use of the "fair market value" standard for valuing businesses in the context of a marital property division, *Skokos v. Skokos,* 332 Ark. 520, 968 S.W.2d 26 (1998), as has this court. *Adametz v. Adametz,* 85 Ark.App. 401, 155 S.W.3d 695 (2004); *Cole v. Cole,* 82 Ark.App. 47, 110 S.W.3d 310 (2003); *Crismon v. Crismon,* 72 Ark.App. 116, 34 S.W.3d 763 (2000).

*See also* Ark.Code Ann. § 9–12–315(a)(4) (Repl.2009). "Fair market value" is the price that a seller is willing to accept and a buyer is willing to pay on the open market in an arm's-length transaction; "fair value" is determined by ascertaining all assets and liabilities of the business and the intrinsic value of its stock rather than merely appraising its market value. *Winn v. Winn Enters., Ltd. P'ship*, 100 Ark.App. 134, 265 S.W.3d 125 (2007).

Because Suzanne has raised the "ongoing enterprise" argument for the first time on appeal, we do not address it. An issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *Horton v. Horton*, 2011 Ark. App. 361, 384 S.W.3d 61. Any error argued on appeal must have first been directed to the circuit court's attention in some appropriate manner, so that the court has an opportunity to address the issue. *Id.* A party cannot wait until the outcome of a case to bring an error to the circuit court's attention. *Id.* At trial, Suzanne consistently attempted to assign value to the separate component assets of the business (including wastebaskets, stationery, and a photo frame), not its overall value as a going concern. Her exhibits focused on the numerous items that made up the assets of Terry's business. In his closing argument, Suzanne's attorney stated: "Dr. Dew keeps the business. When we talk about the businesses, I can only talk about the individual accounts, because that's what the business is. There is no institutional goodwill. The business is the accounts and the personal property and the liabilities." Additionally, the record is devoid of any evidence showing the value of the business as an ongoing concern. There is also no evidence demonstrating that the amount the parties spent improving the leasehold had any identifiable value to the business or the parties. The burden is upon the appellant to bring up a record sufficient to demonstrate that there was error below. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Gilliam, supra.*

There are other flaws in Suzanne's argument. She erroneously included the children's money and the 2008 tax overpayment, which was applied to the parties' tax obligation for 2009, in her list of assets purportedly awarded to Terry. She did not account for the businesses' liabilities. The testimony, obviously credited by the trial court, and the exhibits introduced by Terry more than adequately demonstrated that the trial court equally distributed the marital estate. Giving due deference to the trial court's superior ability to observe the witnesses and assign credibility, its overall distribution of the parties' property was not clearly erroneous.

### B. The Option to Purchase the Leased Real Estate

Suzanne next argues that the circuit court committed an error of law in ruling that the right to purchase the clinic building, which Azzore leased, was not a marital asset subject to division. The court concluded that, although the option was a legal right acquired during the parties' marriage, which Terry could choose to exercise, it was "simply contingent on a future event that may never happen" and was not marital property. Citing *Richardson v. Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983), and *Cole, supra,* Suzanne correctly points out that Arkansas appellate courts have held that an option acquired during the marriage is marital property, even though the option is not exercised until after divorce. Thus, we agree with Suzanne that the trial court erred in its conclusion. Nevertheless, there was no prejudice, because there was no evidence that this option had any value

at the time of the divorce. Neither Terry's witness, CPA Scotty White, nor Suzanne's witness, CPA Jim Phillips, assigned any value to the option. We will not reverse for non-prejudicial · error. *Greenway Land Co. v. Hinchey,* 2011 Ark. App. 402, 2011 WL 2140412. It is the appellant's burden to show prejudice on appeal. *Id.*

### C. The Dew Residence

Suzanne further argues that the trial court erred in awarding Terry the Dew Residence in its entirety because it was acquired by the parties before 1997, when Arkansas Code Annotated section 9–12–317 was amended. The predecessor to that statute was addressed in *Cole, supra,* when we reversed the trial court's award of the parties' marital residence to the wife. We held that, under the pre–1997 version of the statute, the trial court was authorized only to order the property sold, give a party possession of the property until it would be sold at some future time, or leave the parties as tenants in common. *See also Brown v. Brown,* 373 Ark. 333, 284 S.W.3d 17 (2008); *Creson v. Creson,* 53 Ark.App. 41, 917 S.W.2d 553 (1996). Suzanne cannot assert this argument on appeal because she raised it for the first time in a motion for new trial. At trial, Suzanne consistently asked the court to award her the Doxa Retreat, the Dew Residence, and the Dew Farm. A party cannot complain of action he has induced, consented to, or acquiesced in. *Neel v. Citizens First State Bank of Arkadelphia,* 28 Ark.App. 116, 771 S.W.2d 303 (1989). "[A] circuit court does not abuse its discretion by denying a posttrial motion seeking to raise an issue that was not raised at trial." *Horton,* 2011 Ark. App. 361, at 15, 384 S.W.3d at 70.

Suzanne concludes her brief by arguing that the trial court did not follow § 9–12–315(a)(1)(A)'s requirement that marital property be distributed at the time the divorce was entered because it rejected her proffer of updated evidence of the September 24, 2009 value of certain assets and denied her motion for a new trial. We disagree. The circuit court's power to grant a new trial under Arkansas Rule of Civil Procedure 59 (2011) is necessarily broad and will not be disturbed on appeal in the absence of an abuse of discretion. *Payne v. Donaldson,* 2010 Ark. App. 255, 379 S.W.3d 22. It is true that the divorce decree was entered eight months after trial. However, Suzanne's assertion that, to follow § 9–12–315, a trial court must, as a matter of law, reopen the record or grant a new trial to admit evidence that became available after trial was concluded is unreasonable. When a circuit court's interpretation of the law is assigned as error on appeal, the trial judge's findings are given no deference. *Id.* Issues of statutory construction are reviewed de novo on appeal. *Id.* Although the appellate court is not bound by the decision of the trial court, unless it is shown that the trial court's interpretation was in error, this court should accept its interpretation on appeal. *Id.* While § 9–12–315(a)(1) requires that property be valued at the time of the divorce, *see Skokos v. Skokos,* 344 Ark. 420, 40 S.W.3d 768 (2001), it does not require the trial court to reopen the record or set aside a decree and hold an additional hearing for the purpose of receiving the most up-to-date evidence. This court does not read into statutes language that is not there or in such a way that will lead to an absurd result. *Turnbough v. Mammoth Spring Sch. Dist. No. 2,* 349 Ark. 341, 78 S.W.3d 89 (2002). The trial court did not abuse its discretion in refusing to reopen the record or in denying the motion for new trial.

## II. The Cross–Appeal

On cross-appeal, Terry argues that the trial court's award of alimony is not reasonable, pointing out Suzanne's ability to earn a living with her valid veterinary license. He also states that she overstated her monthly expenses and that the trial court did not take into account the other expenses that he is paying on behalf of Suzanne or his reduced income after he adjusted his schedule and the nature of his practice, with much less travel, to accommodate the ₁₃demands of being the custodial parent. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Burns v. Burns*, 2011 Ark. App. 312, 383 S.W.3d 458. In fixing the amount of alimony to be awarded, the trial court is given great discretion, and the appellate courts will not disturb the award on appeal unless there is an abuse of that discretion. *Id.* The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* Secondary factors to be considered by the trial court include (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of both parties; and (4) the earning ability and capacity of both parties. *Id.* The amount of alimony awarded should not be reduced to a "mathematical formula" because the need for flexibility outweighs the need for relative certainty. *Id.*

At the time of the trial, Suzanne was forty-eight years old and receiving counseling for depression. Although she received substantial property, including a home, in the distribution of assets, she had not worked for years; had no job or offers of employment; and would require some retraining to secure a well-paying position. In closing arguments to the trial court, Terry's attorneys agreed that Suzanne would be entitled to some alimony, suggesting two years in the approximate amount of $4400 per month without a reduction for child ₁₄support. In light of the broad discretion vested in the trial court, we hold that the trial court did not clearly err in setting Suzanne's alimony award.

Affirmed.

PITTMAN and GLOVER, JJ., agree.