
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-20

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** May 6, 2015 |
| GREGORY WHITT | | APPEAL FROM THE WASHINGTON |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. JV-2013-404-3] |
| V. | | |
| | | HONORABLE STACEY |
| ARKANSAS DEPARTMENT OF | | ZIMMERMAN, JUDGE |
| HUMAN SERVICES AND MINOR | | |
| CHILDREN | | |
| | APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Gregory Whitt appeals the order of the Washington County Circuit Court that gave custody of three of his children, J.W., G.W., and T.W., to their mother, Jennifer Shirley, and closed the dependency-neglect case. He argues that the circuit court erred in finding that placement with Jennifer was in the children's best interest. We affirm.

We explained the underlying facts of this case in a previous opinion:

In June 2013, the Department of Human Services (DHS) exercised a 72-hour hold on Gregory Whitt's three children after he had been arrested for domestic violence, public intoxication, and endangering the welfare of a minor. The children's mother, Jennifer Shirley, was living in Florida at the time. Gregory had obtained custody of the three children by an August 2012 agreed order.

The children were placed in foster care, and the circuit court later adjudicated the children dependent-neglected. In its adjudication order, the court made the following findings regarding the night the children entered DHS's custody: Gregory and his girlfriend were drunk when the police arrived at their house; Gregory placed one of the children between him and

the door to prevent the police from entering; and his girlfriend had a bloody lip.

At the hearing, the court ordered the children to remain in foster care. A no-contact order was already in place between Gregory and his children. The court ordered Gregory to undergo counseling and be drug tested. Jennifer, appearing at the hearing via telephone, was ordered to submit to a hair-follicle test, undergo a psychological evaluation, and be present at the next review hearing.

The court held the six-month-review hearing in October 2013. Both Gregory and Jennifer appeared; neither was represented by counsel. The first witness was Ritchie McFarland, the family-service worker. He testified that Gregory had completed counseling but had failed a drug test. McFarland recommended that the children stay in foster care. He had concerns regarding Gregory, who had said he knew where the foster parents lived and "would get his children back the legal or the illegal way." . . .

Gregory and Jennifer also testified, and the following facts were presented to the court. Jennifer lived in Florida with Gregory's brother, David Whitt. The two were not, however, in a relationship. Further, both the maternal and paternal grandmothers lived in Florida. Jennifer did not have a job and instead stayed home to care for her and Gregory's youngest child. (Per the August 2012 agreed order, Gregory had custody of the three oldest children, while Jennifer had custody of the fourth and youngest child.) Last, a Florida court had placed David Whitt on probation for two counts of child neglect a year earlier.

After the testimony, both DHS and the ad litem recommended that the children stay in foster care. Despite these recommendations, the court awarded permanent custody of the children to Jennifer and closed the dependency-neglect case. In its ruling, the court noted that Gregory was mentally unstable, posed an emotional threat to his children, and was unfit. It further found that Jennifer had passed a drug test and that her visitation had gone well. It ruled that giving Jennifer custody was in the children's best interest. Finally, the court ruled that Gregory could have visitation once the no-contact order was lifted but added the requirement that his brother, David, supervise it.

*Whitt v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 449, at 1–3, 441 S.W.3d 33, 34–35

(*Whitt I*). In *Whitt I*, we held that the circuit court erred in granting Jennifer permanent

custody because "there simply was not enough information in front of the court to make

this decision. Rather, the facts in front of the court suggested the need for further investigation into the appropriateness of both parents." *Id.* at 5, 441 S.W.3d at 36. We therefore reversed and remanded for further proceedings.

Upon remand, the circuit court held a permanency-planning hearing on 10 October 2014. Nirika Morris, the Washington County DHS Supervisor, introduced a court report and a case plan and recommended continued reunification efforts with Jennifer. This recommendation was based on the fact that an Interstate Compact on the Placement of Children (ICPC) home study had not been completed; Morris agreed that if a favorable ICPC study was in place, she would recommend returning the children to their mother. Morris also explained that Gregory had been recently convicted on criminal charges and sentenced to six years' imprisonment, so the Department was not recommending further reunification efforts with him. Morris agreed that, according to the court report, the children were "doing great" both in school and at home.

On cross-examination, Jennifer's counsel attempted to introduce a home study of Jennifer's home conducted in November 2013 by the Florida Department of Children and Families (DCF), but Gregory's counsel objected on hearsay and relevance grounds. The court initially decided to allow the report into evidence as a business record but ultimately denied the admission of the report because counsel failed to provide opposing counsel with a copy of the report in advance of the hearing. The report was proffered and made part of the record.

Gregory testified that he was charged with jury tampering in June 2013 and was currently incarcerated at the Washington County Sheriff's Department. Counsel

introduced certified documents from the Elkins District Court, which showed that in December 2013, Gregory was found guilty of endangering the welfare of a minor. Gregory acknowledged that because of his incarceration, the children could not go home with him, but he was concerned about them returning to Florida with their mother because she had "abused them physically and mentally in the past." Gregory explained that in December 2012, he observed a bruise on J.W., and he also stated that he had seen evidence of physical abuse on all the children. Gregory also testified that he knew "for a fact" that Jennifer was using drugs. He expressed concern with Jennifer and the children living with his brother, David, and Gregory's counsel introduced a certified copy of David's plea of guilty to child neglect and battery in October 2012. Gregory also expressed concern that Jennifer did not have a job, a car, or any way to support herself without David. Gregory stated that he would like the children to be placed with his current wife, Toni Whitt, or her parents. On cross-examination, Gregory acknowledged that he had been found guilty of jury tampering and sentenced to six years' imprisonment. He also acknowledged that he had provided no financial support to his children in the past year but explained that it was "because I have had no available contact."

Twelve-year-old J.W. testified that he was in the seventh grade at Cutler Ridge Middle School in Miami, Florida, and that he had good grades. He explained that he was in a special program at school that focuses on marine biology and that he "love[d] it." As for his living arrangements, J.W. explained that he and his little brother T.W. slept on bunk beds in one room; his brother G.W. and his cousin Ray slept on bunk beds in another room; his mom slept in a third room, with his youngest brother, M.W., in a

toddler bed; and his Uncle Dave slept on a pull-out couch. He testified that he had never seen anyone drink alcohol at the house and that his mother had never hit him or his brothers. He also stated that his uncle helped take care of him and his brothers and that he felt safe around his uncle. When asked if he wanted to go home to Florida, J.W. said yes, and when asked if he wanted to see his father, he said, "I can't really answer that."

David Whitt testified that Jennifer and the children currently live with him and his son, Ray, and that all the children get along fine. He explained that the house had four bedrooms and two bathrooms but that one bedroom was still under construction. He testified that he was honorably discharged from the Marine Corps after suffering a head injury, that he currently received veterans benefits, and that his total monthly income was $4500. He also testified to the circumstances surrounding his pleading guilty to child neglect, explaining that he was involved in an altercation with his then wife and her twelve-year-old daughter while his three-year-old daughter was in the room. He clarified that he had never hit his ex-wife or her daughter and explained that he later pled guilty to child neglect because he was blackmailed by Gregory. Finally, he stated that although he had no relationship with his brother Gregory, he would be willing to act as a supervisor for the children's visitation with Gregory.

Jennifer testified that the children had been with her for a year and that they were "doing great." She expressed her desire for the children to remain in her care and opined that it would be detrimental to them to be removed from her home. She agreed that she did not have financial resources to take care of the children on her own but stated that, if necessary, she could get a job and her own home and that she has a great support system

of other family members. She also explained that she planned to look for a job once M.W. reached four years of age and started preschool.

In its oral ruling, the court noted the first statutory preference at the permanency-planning stage, which is placement with a fit parent, and opined that it could not place the children with Gregory because he is incarcerated and because it would not be in the children's best interest. The court found that Gregory had been convicted of endangering the welfare of a minor and had committed the offense of jury tampering in March 2014, after the first order placing custody of the children with Jennifer. The court gave "no credence" to Gregory's concerns about his children living with David, considering that Gregory had previously agreed to M.W. being in Jennifer's custody in David's home. The court also noted that Jennifer's hair-follicle test was clean and that J.W., whom the court found "extremely credible," testified that he and his brothers had never been hit by their mother. The court found "zero evidence" to support Gregory's concern that the children were physically abused or in danger in David's home. The court found that ICPC did not apply to the parents in this case and that the "[h]ealth, safety[,] and best interests of these three older children are best served by continuing to be with their mother."[1] The court concluded:

> At today's Permanency Planning, the burden is on the parent to demonstrate genuine sustainable investment in completing the requirements of the case plan and following orders of the Court in order to authorize the plan to return the child to the parent and keep the goal reunification. Mr. Gregory Whitt has failed to carry his burden as he is incarcerated, he cannot provide

---

[1] The circuit court is correct that the ICPC does not apply when a child is returned by the sending state to a natural parent residing in another state. *See Ark. Dep't of Human Servs. v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002).

stable housing for the children, he still has not resolved, I believe, the issue with the domestic violence in the home. . . . I am going to order that the children be placed in the permanent custody of Jennifer Shirley.

The court entered a written order on 23 October 2014 that incorporated its oral ruling. The written order also made the following findings:

Mother has complied with all of the court orders and the case plan making significant measurable progress. Specifically, she has demonstrated the ability to parent and protect the children as the children have thrived in mothers [sic] home for the past year. . . . There is NO EVIDENCE the children are at risk of harm in the home of their mother and uncle David Whitt. . . . [T]he present living situation is a stable and safe home environment. Moreover, the evidence is clear and convincing that the juveniles are thriving in their present environment and are dong very well in school. The mother has made significant measurable progress towards achieving the goals established in the case plan, alleviating or mitigating the causes of the juveniles' removal from the home and completing the court orders and requirements of the case plan, and diligently working towards reunification.

(Emphasis in original.) Gregory again appealed the circuit court's order granting custody to Jennifer.

This court reviews findings in dependency–neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Porter v. Ark. Dep't of Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Seago v. Ark. Dep't of Human Servs.*, 2011 Ark. 184, 380 S.W.3d 894. We give great deference to the circuit court as it is in a far superior position to judge the credibility of the witnesses. *Krantz v. Ark. Dep't of Human Servs.*, 2011 Ark. 185, 380 S.W.3d 927.

On appeal, Gregory argues that the circuit court again erred in finding that placing the children with Jennifer was in the children's best interest. He asserts that there are still

questions and concerns about (1) David's status as "child abuser," (2) DHS's failure to admit Jennifer's psychological evaluation into evidence, (3) Jennifer's current or future earning potential, and (4) the stability and appropriateness of the children's living arrangements. Gregory also argues that the proffered Florida DCF report should have been admitted and proceeds to point out inconsistencies between information in that report and the testimony at the permanency-planning hearing.

In response, DHS contends that the evidence presented below adequately demonstrated that placement with Jennifer was in the children's best interest. DHS notes that for the twelve months prior to the permanency-planning hearing, Jennifer cared for the children and provided for all their needs, thus giving them the necessary stability. DHS also points out that the children have done well academically and that J.W. testified that he wanted to live with his mother.

We hold that sufficient evidence was provided at the permanency-planning hearing for the court to make a best-interest determination, and we are not left with a definite and firm conviction that a mistake has been made. As to Gregory's evidentiary argument, it was Gregory's counsel who objected to the report's admission; a party cannot complain of action he has induced, consented to, or acquiesced in. *Dew v. Dew*, 2012 Ark. App. 122, 390 S.W.3d 764. We therefore affirm the award of permanent custody to Jennifer.

Affirmed.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.
*Tabitha B. McNulty*, County Legal Operations, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.