Cite as 2023 Ark. App. 448

# ARKANSAS COURT OF APPEALS

DIVISIONS I and II
No. CV-21-588

| | |
|---|---|
| LARA WILKERSON (FORMERLY DURHAM) | Opinion Delivered October 4, 2023 |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-19-402] |
| V. | |
| RANDALL DURHAM | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEE | SUBSTITUTED OPINION ON GRANT OF REHEARING |
| | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant, Lara Wilkerson, and appellee, Randall Durham, were married in October 2015, separated in May 2019, and were divorced by an August 2021 decree on the grounds of eighteen months' separation. Lara appeals the decree's division of property, contending that the circuit court clearly erred (1) by awarding Randall a portion of the value of Lara's niece's home; (2) by awarding Randall half of Lara's bonus because it was actually an indebtedness; (3) by not awarding Lara "some" interest in Randall's premarital home; (4) by not awarding Lara "some" interest in Randall's premarital "hotrod" vehicle; and (5) by not awarding Lara half of the value of Randall's marital retirement funds. We affirm.

Domestic-relations cases are reviewed de novo on appeal, but the appellate court does not reverse a circuit court's findings unless they are clearly erroneous. *Wilcox v. Wilcox*, 2022

Ark. App. 18, 640 S.W.3d 408. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Furthermore, a circuit court has broad powers to distribute property in a divorce to achieve equitable distribution; mathematical precision is not required. *Id.* In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

Reviewing this appeal under the proper standards, giving due regard to the credibility determinations made by the circuit court, the relevant facts are these. Two months prior to marrying, Randall purchased a home where the parties lived from their marriage in October 2015 until their separation in May 2019. Shortly after Lara and Randall married, Lara became the guardian of her minor niece (MC). The parties used marital funds to replace carpet and siding on the home, and marital funds were used to pay the monthly mortgage and utilities. However, there was no evidence presented that the home's value was increased by any marital-fund expenditures, nor was there any evidence of the home's value or the equity in the home.[1] The circuit court made no findings regarding Randall's premarital home; thus, Randall kept full ownership and responsibility for any related indebtedness.

Lara had bought a Harley Davidson motorcycle right before she and Randall married,

---

[1]Randall had not been employed since August 2019. He testified that his $1,362 monthly mortgage payment on the VA loan had been held in abeyance for over a year pending divorce.

2

and Randall had long had a 1965 Dodge Coronet "hotrod" car. They both spent marital funds on indebtedness and basic maintenance on the motorcycle and for upkeep and major improvements to the hotrod, which was not in running order before they married. Neither party disputed that these were premarital assets, and neither party set a present value on either vehicle, although both testified about the marital money spent on each. The circuit court awarded Lara her premarital motorcycle and Randall his premarital car.

During the marriage, and in anticipation of starting a financial-advising business, Aspire Wealth Builders, LLC, Lara accepted two payments totaling $115,000 in 2018 that represented a sign-on bonus. The bonus was eventually revealed to Randall and was presented as a forgivable loan; the amount of indebtedness decreased the longer Lara stayed with the company. Lara admitted that she had never repaid any of those funds, and she had no intention of leaving her employment. At the time of the divorce, Lara's marital interest in the business was worth $150,000, which the circuit court divided evenly (and which is not contested on appeal).

The circuit court also evenly divided the total $115,000 that it found to be a sign-on bonus paid to Lara during the marriage. The circuit court took pains to spell out that Lara had been very evasive, unclear, and ultimately deceptive about how those funds were acquired and whether they had already been spent. There was no evidence that Lara ever paid any money toward the forgivable loans, and the funds were taxable as income to Lara. The circuit court found that Lara had been deceptive on her affidavit of financial means and that she had been deceptive, and perhaps even fraudulent, in her preparation of her tax returns.

3

Regardless, the sign-on bonus, which Lara had dissipated, was deemed marital and divided evenly.

As noted, the parties separated in May 2019. Lara initially filed for divorce, and Randall counterclaimed for separate maintenance. Obtaining discovery from Lara proved problematic, and she changed attorneys more than once, leading to delays in getting to trial.

In April 2020, Lara contracted to purchase a home at 203 Chinook in Hot Springs for $364,500, putting $10,000 in marital funds toward the purchase. Randall was resistant to Lara's purchase of a new home while they were still married; he had serious concerns that Lara was being deceitful about this and the discovery process. Lara applied for a loan in her own name and was approved. As a married person, however, she could not take title to the property in her own name absent Randall's signature, which he refused. Lara then petitioned the probate division of circuit court and was granted permission to buy the home in the name of MC's estate with guardianship funds, in addition to the $10,000 Lara had already paid with marital funds. The house was purchased in MC's estate's name in September 2020. The probate division of circuit court ordered Lara to pay $2,550 a month in rent to MC's estate. In November 2020, Lara petitioned the probate division of circuit court for permission, as guardian, to sell her niece's house, to buy it herself at the same price the niece had paid for it, and to and put title in her own name because she was presently in a position to do so. The probate division of circuit court granted Lara permission the same day it was requested. Lara did not go through with that purchase prior to the finality of the divorce nor did Lara pay rent as ordered. Lara instead drew $2,000 a month out of her niece's account.

4

At the time of the divorce trial in June 2021, there was no dispute that the Hot Springs house was worth at least $396,000. In fact, Lara testified it was worth more than $400,000. The circuit court determined that although the title to the house was not in Lara's name, she had requested and been given authority to sell MC's house to herself but did not do so. The circuit court found that $10,000 in marital funds had been paid toward the residence and that Lara had "created a valuable right" in the house that was marital property. The circuit court awarded Randall a money judgment against Lara in the amount of $20,750, representing his half of the equity in the house, calculated as the current value of the home that exceeded the money paid out of guardianship funds.

Randall requested alimony, but the circuit court denied that request. Randall had been an aviation mechanic, but he had been unemployed since August 2019. Lara is a financial advisor and earns substantially more than Randall. Randall began receiving Social Security benefits in 2020 after he turned sixty-two, and he "cashed out" approximately $31,000 from his retirement accounts to pay for living expenses pending divorce. At the time of divorce, approximately $14,000 was left, which the circuit court allowed Randall to keep. This was a consideration in the court's denial of Randall's request for alimony.

The final divorce was granted to Lara in an August 2021 decree on the grounds of eighteen months of separation. The divorce decree included the court's assessment that "[t]he evidence was plentiful with regard to the Wife's wrongful disposition of marital funds and her intention to defeat the marital interest of the Husband." The decree noted that Lara had presented "fake" loan documents to Randall and had obfuscated the discovery process; it

noted the "contradictory" and "perhaps fraudulent" tax returns she prepared. The preceding findings were reduced to writing in a formal order, which Lara appeals.

Lara asserts that the circuit court clearly erred in (1) finding any marital value in her niece's home; (2) dividing Lara's "bonus" because it was a business loan and not a bonus; (3) denying Lara "some" interest in Randall's premarital home; (4) denying her "some" interest in Randall's car; and (5) denying her half of the entirety of Randall's retirement funds.

Lara has not demonstrated that the circuit court clearly erred in this case. The circuit court was required, as the trier of fact, to determine the credibility of witnesses and to resolve conflicting testimony. *Thakar v. Thakar*, 2022 Ark. App. 284, 646 S.W.3d 666. On appeal, we will not disturb a circuit court's resolution of disputed facts or determinations of credibility as these are within the province of the finder of fact. *Id.*

Our de novo review of the evidence convinces us that the circuit court attempted to make an even division of marital property, returned ownership of premarital assets to the person who owned it prior to marriage, and allowed normal and necessary living expenses to be expended pending divorce. The circuit court exercised its discretion in denying Randall any alimony, motivated in part by having allowed Randall to cash out his retirement fund and retain the remaining $14,000. The division of marital property and an award of alimony are complementary devices that may be utilized by the circuit court to make the dissolution of a marriage financially equitable. *See Johnson v. Johnson*, 2018 Ark. App. 308, 550 S.W.3d 911. The circuit court permitted Randall to have half of Lara's marital sign-on bonus that she had hidden and lied about.

6

Contrary to Lara's assertion that the circuit court wrongly "took property from an orphan," the circuit court granted a money judgment against Lara to pay Randall his half of the marital interest in 203 Chinook. *See Dew v. Dew*, 2012 Ark. App. 122, 390 S.W.3d 764 (holding that an option acquired during the marriage is marital property even if the option is not exercised until after divorce); *Page v. Anderson*, 85 Ark. App. 538, 157 S.W.3d 575 (2004) (former husband's acquisition of an enforceable right to purchase a condominium prior to entry of divorce decree equated to marital property). It is beyond dispute that Lara owes Randall $5,000, representing half of the $10,000 earnest money that Lara paid with marital funds to secure the real estate deal. As to the remaining $15,750 awarded to Randall, the circuit court did not clearly err in awarding that judgment against Lara given that Lara had initially contracted during the marriage to buy the Chinook property in her own individual capacity and subsequently manifested her intent to exercise that right when she requested permission from the probate court to purchase the Chinook property from the ward in the guardianship case.[2] The probate court granted her the authority to purchase the property

---

[2]We note that our record reflects that Lara purchased the property so that both she and her ward would have a place to reside. Because Lara was still married to Randall and she could not purchase the home without Randall's cooperation, this procedure was intended to be utilized solely as a stop-gap measure for the short period of time until the decree could be entered—not as an attempt to take advantage of the ward's assets or property. As such, these facts are distinguishable from the cases cited by the dissent which involve a guardian taking an interest in property antagonistic to the ward. If any advantage was taken, the remedy rests by an action of the ward against the guardian in the guardianship case.

from the ward at any time for the same price initially paid for it although the house had markedly increased in value.[3]

While our dissenting colleague offers several reasons why the guardianship laws would not or should not allow the property to be sold to the guardian individually or permit the placement of a lien on the ward's property and why this inflicts legal harm to the ward, none of these arguments were raised by Lara on appeal and cannot form the basis for reversal now. We acknowledge that the facts in this case illuminate issues within the guardianship-ward relationship. However, that is not the case before us; rather, the case on appeal concerns the division of marital property within a divorce case. And in this case, Lara affirmatively asked for and obtained permission to purchase and take title to the Chinook property during the marriage and cannot take an inconsistent position on appeal.

We are not left with a definite and firm conviction that the circuit court clearly erred. To the contrary, after our de novo review, we are convinced that the circuit court did its level best to ensure that the overall distribution was fair and equitable, particularly considering its assessment of the credibility of the witnesses and the weight afforded to the evidence presented. The circuit court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets

---

[3]It appears that if any party improperly benefited from the ward, it was Lara, who had been ordered to pay monthly rent but had not done so, and who had wrongly been taking thousands of dollars out of the ward's account every month. These, however, are other matters for the probate court to resolve.

are divided. *See Steeland v. Steeland*, 2018 Ark. App. 551, 562 S.W.3d 269. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Id*. We hold that Lara has failed to demonstrate clear error in the circuit court's findings.

Affirmed.

GLADWIN, GRUBER, THYER, and WOOD, JJ., agree.

BARRETT, J., dissents.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. I respectfully dissent from the majority's opinion because the circuit court's decision to grant Randall a marital interest in the home owned by the ward of Lara was clearly erroneous. The majority states that "the circuit court granted a money judgment against Lara to pay Randall his half of the marital interest in 203 Chinook." Since a guardian may not obtain an interest in the property of the ward under Arkansas law, there was no marital interest created. Furthermore, placing a lien on property owned by the ward for a judgment against the guardian is also clearly erroneous. The decision of the majority is in danger of overturning decades of guardianship/ward case law as well as property law.

Lara is the guardian of her niece, who lost both of her parents and was the beneficiary of life insurance proceeds. During Lara's separation from her husband, she needed a place for herself and her niece to live. Lara signed a real estate contract in her own name to purchase property at 203 Chinook for the sum of $364,500 and put a down payment on the property in the amount of $10,000. However, because she was married to Randall, the financing

9

company required Randall to also execute the documents. Randall refused to sign, and therefore, Lara was unable to finance the purchase of the residence herself. Lara then petitioned the probate division of circuit court acting in the guardianship for permission to purchase the residence with the ward's funds and place legal title in the guardianship estate. The circuit court granted permission, and on September 20, 2020, the residence was purchased in cash with the ward's funds, and title was conveyed to the Guardianship Estate. It is undisputed that the $10,000 down payment was made with marital funds. Lara and her niece moved into the house.

Two months later, on November 20, 2020, Lara, individually, petitioned the probate division of circuit court for permission to purchase the property from the ward in her own name for the same price paid by the ward. The court granted permission, but Lara never purchased the property.[1]

In the meantime, Lara and Randall continued through the divorce proceeding. By the time of the divorce proceeding on June 10, 2021, the value of the residence in the Guardianship Estate had increased in value by $40,000 and remained property in the Guardianship Estate since it had never been conveyed to Lara, individually, in any form or fashion. In formulating the division of marital property, the circuit court determined that Randall was entitled to a judgment against Lara in the amount of $20,750, representing one-

---

[1]The majority claims that Lara improperly benefited from the orphan because she was ordered to pay rent and did not do so. The fact that the ward made all the payments on the house and the guardian did not expend marital funds (i.e., rent) during the pendency of divorce is only further evidence that Lara did not have a marital interest in the home.

half of the increased value of the residence in the Guardianship Estate. It is undisputed that Lara used $10,000 of marital funds to pay the down payment and $5,000 of that money should be returned to Randall by Lara. However, the court did not fashion that remedy; instead, the circuit court awarded Randall a money judgment against Lara in the amount of $20,750, representing his half of the equity in the ward's house, calculated as the current value of the home that exceeded the money paid out of guardianship funds. Further, the court encumbered the Guardianship Estate with a judgment lien in favor of Randall. The decree provides in pertinent part: "The judgment [against Lara] shall be a lien on the real estate until the judgment is paid in full. . . ."

This was erroneous in at least two respects. First, the property was purchased by the Guardianship Estate, remained an asset in the Guardianship Estate, and is currently an asset in the Guardianship Estate. Neither Lara nor Randall can claim any interest in the assets of the Guardianship Estate. Next, any increase in the value of the property inures solely and exclusively to the Guardianship Estate. The increase in value does not, and cannot, belong to Randall or Lara. The residence was purchased with estate funds, the residence has continuously been owned by the estate, and fortunately for the estate, the property has appreciated in value. I have no issue with the court fashioning a remedy for Randall to recoup his portion of the $5,000 down payment made with marital property from Lara; however, awarding a third party a judgment lien against the assets exclusively owned by the Guardianship Estate upends existing guardianship/ward law and exposes wards to virtually unlimited liability

11

for actions taken by the guardian. This is precisely why guardianships are created in the first place—to protect the assets of the ward.

The law is so clear on this issue, it begs the question of how the circuit court could justify such a blatant error and how the majority of this court could follow suit. For over a hundred years, Arkansas courts have not allowed guardians to purchase property or acquire an interest in the property of his or her ward. *Clements v. Cates*, 49 Ark. 242, 245, 4 S.W. 776, 777 (1887) states,

> The law forbids a trustee and all other persons occupying a fiduciary or quasi fiduciary position from taking personal advantage touching the things or subject as to which such fiduciary position exists; . . . If such a person acquires an interest in property as to which such relation exists, he holds it as a trustee for the benefit of those in whose interest he was prohibited from purchasing to the extent of the prohibition.

Continuing, with reference to the rule, "Its applicability to guardians and wards and persons standing in like relation is apparent." *Haynes v. Montgomery*, 96 Ark. 573, 577, 132 S.W. 651, 652–53 (1910). It is clear that the court should not have allowed the ward to be taken advantage of in that way. To her credit, Lara did not transfer title to her name. While the court may disapprove of some of Lara's conduct as guardian to the guardianship estate, the court cannot correct those wrongs by encumbering the Guardianship Estate with a judgement lien against the property owned by the ward.

The circuit court found that the guardian had created "a valuable right" in the ward's property by this very breach of fiduciary duty of obtaining permission to transfer title to herself and further found that Randall had a marital interest in the ward's property through this "valuable right." One should ask: Despite a century of law to the contrary, how did the circuit

court find that a valuable right was created; he determined out of whole cloth that Lara "for all intents and purposes is the owner of the 203 Chinook, with the power to convey legal title to herself at any moment." Nothing could be further from the truth or law.

Our property law emanates from centuries of common law and some statutory law. Nowhere in the history of property law is title to real estate determined by an "all intents and purposes" standard. Intent has its place in criminal law and even tort law; but title in property does not vest on the basis of intent. Title is vested in real estate by deed, plain and simple. In this case, there is no dispute that the title to this real estate is held in the name of the ward. As held for decades, Arkansas law forbids a guardian to purchase the property of his ward directly or indirectly, and if he does so, it permits the ward to have the sale set aside without a showing of actual fraud or injury. *Haynes*, 96 Ark. 573, 132 S.W. 651. "It is obvious that during the existence of the guardianship the transactions of the guardian cannot be binding on the ward if they are of any disadvantage to him." *Id.* at 577, 132 S.W. at 653.

Further, in another attempt to justify the creation of this "valued right," the circuit court and the majority herein are essentially treating the Lara's alleged breach in the Guardianship Estate and the probate court's permission to purchase the property as a legally binding option to purchase real estate that has been held by Arkansas appellate courts to be marital property subject to division. However, the order of the probate court giving permission to the guardian to purchase the property from her ward is not analogous to a legal option to purchase. An option to purchase real estate is a legal contract that requires all of the elements of a contract, including that it be in writing and consideration paid. Lara did not have a legal

13

contract for the option to purchase this real estate. She merely was granted permission to convey title to herself, which is an error.

Compounding the error even more, the circuit court awarded Randall a judgment lien against the property held for and by the ward. The court decreed that "[t]*he judgment shall be a lien on the real estate until the judgment is paid in full*." The ward is not a party to this litigation. The court cannot place a lien against the property owned by the ward for a judgment owed by the guardian. *See* Ark. Code Ann. § 16-65-117(a)(1)(A) (Supp. 2023). Allowing the circuit court to place a lien on the property of a ward for the judgment against the guardian certainly sets a disastrous and extremely unfortunate precedent that could put a ward's property at risk any time a guardian is burdened by a judgment. This court should not allow the taking of a ward's property without due process in a divorce proceeding in which the ward is not a party. The majority claims that Lara did not raise these issues on appeal; however, I disagree. The first point on appeal is the argument that the circuit court erred by awarding Randall a portion of the value of Lara's niece's home. The appellant's brief includes the following:

> It did not justify compounding the harm to the niece's estate by further divesting the niece of $20,750, ordering that sum be given to Randall, and *securing that sum with a lien on the niece's home.* (RP 81) at ¶ 9.

> It was clear error to do so because Lara (as spouse) never received a deed and never even contracted to buy the real estate. Despite that Lara (as guardian) was *authorized* to sell the real estate, Lara (as spouse) never received a divisible property right in it. At most, she had a non-divisible future expectancy to acquire the property after the divorce.

(First emphasis added.)

14

In addressing the judgment given Randall, the lien created is so intertwined in the argument that you cannot separate the two.

Finally, I strongly disagree with the majority's reasoning why this case is distinguishable from all other guardian/ward precedent. The majority has surmised that the purchase of the property with guardianship funds "was intended to be utilized solely as a stop-gap measure for the short period of time until the decree could be entered—not as an attempt to take advantage of the ward's assets or property." The majority has delved into the dangerous arena of fact-finding. Nowhere in the record did the judge, the appropriate fact-finder, make this determination. Furthermore, no party testified that this was the intention. The finder of fact may base its findings of fact upon reasonable inferences derived from other evidence received, but the reviewing court has no right to do so. The majority drew inferences to try to make sense of a ruling that is nonsensical.

I dissent.

*Crown Law*, by: *Matt Kezhaya*, for appellant.

*Legacy Law Group*, by: *Bryan J. Reis*, for appellee.